**Gerald JOSEPHS t/a Jerry's Outlet, Plaintiff,**

v.

**The GOVERNMENT OF the UNITED STATES of America and the Secretary of Agriculture, Defendants.**

**Civ. A. No. 81–1785.**

United States District Court, E. D. Pennsylvania.

Feb. 19, 1982.

(Swygert, J., concurring).

Jay A. Hurvitz, Philadelphia, Pa., for plaintiff.

Peter F. Vaira, Jr., U. S. Atty., Antoinette R. Stone, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

EDWARD R. BECKER, District Judge.*

This appeal from a determination of the United States Department of Agriculture Food and Nutrition Service ("Agency") requires us to decide whether the Food Stamp Act of 1977, 7 U.S.C. § 2023 (Supp. IV 1980), entitles plaintiff Gerald Josephs to de novo review of the sanction imposed by the Agency following a finding of violation.[1] Contending that Josephs is entitled to de novo review only of the Agency's determination that Josephs violated the Act, which

---

\* Judge of the United States Court of Appeals for the Third Circuit, sitting by designation. At the time of the hearing, Judge Becker was a judge of the United States District Court for the Eastern District of Pennsylvania.

1. We do not view the Third Circuit Court of Appeals' judgment in *Mayfair Supermarkets, Inc. v. United States,* 671 F.2d 496 (3d Cir. 1981), *aff'g mem.* No. 79–2501 (D.N.J. Oct. 14, 1980) (Bench Opinion), *cert. denied,* —— U.S. ——, 102 S.Ct. 1006, 70 L.Ed.2d —— (1982), as a conclusive determination of this issue. The district court did not decide explicitly whether it had jurisdiction to review the sanction imposed by the Agency:

As to the sanctions, again, the defendant urges that this Court has no jurisdiction to review the sanctions imposed by the administrative agency. That may be correct, but even if I were to conclude otherwise, my review of the sanctions imposed and the regulations referred to by [plaintiff's attorney] would lead me to the conclusion that the sanctions imposed were not arbitrary or capricious and were justified because of the nature of the violations, what led up to those violations, and under the applicable regulations.

Transcript at 19, *Mayfair Supermarkets, Inc. v. United States,* No. 79–2501 (D.N.J. Oct. 14, 1980). The Third Circuit affirmed in a per curiam judgment order.

Josephs does not challenge, the Government has moved for summary judgment. We will grant the Government's motion for the reasons set forth below.

Josephs is the owner and operator of "Jerry's Outlet," a retail food store. An Agency investigator visited Jerry's Outlet on six occasions between January 30 and February 20, 1980, and, during five of these visits, purchased ineligible items with food stamps. After notifying Josephs of the reported violations of the Act, the Agency determined that Josephs should be disqualified from further participation in the Food Stamp Program for six months. Josephs appealed this determination within the Agency, but the disqualification sanction was sustained. Josephs then instituted this action.

The Act provides for judicial review in state court or federal district court of a final Agency determination and provides further that "[t]he suit in the United States district court or state court shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023 (Supp. IV 1980). The only aspect of the Agency's action that Josephs challenges is the severity of the sanction imposed.[2] The Government asserts that Josephs' failure to challenge the factual determination underlying his disqualification is fatal to his application for trial de novo because the trial de novo provision relates only to the finding of violation. The scope of review of the sanction, submits the Government, is that articulated by the Supreme Court in *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1457–58, 36 L.Ed.2d 142 (1973) (construing the Packers and Stockyards Act) in which the Court stated that "the Secretary's choice of sanction was not to be overturned unless [the court] might find it 'unwarranted in law or ... without justification in fact.'"

Whether and to what extent the Act authorizes judicial review of the sanction imposed are questions that have been answered in different terms by different courts.[3] At least one court of appeals has held that the reviewing court simply lacks jurisdiction to modify or vacate a sanction. *Martin v. United States*, 459 F.2d 300, 302 (6th Cir.), *cert. denied*, 409 U.S. 878, 93 S.Ct. 129, 34 L.Ed.2d 131 (1972); *see also Save More of Gary, Inc. v. United States*, 442 F.2d 36, 39 (7th Cir.), *cert. dismissed*, 404 U.S. 987, 92 S.Ct. 535, 30 L.Ed.2d 549 (1971). Other courts have ruled that a sanction can be reviewed for the limited purpose of determining whether it is authorized by the Act and applicable regulations. *E.g., Kulkin v. Bergland*, 626 F.2d 181, 184–85 (1st Cir. 1980) (test of *Butz v. Glover Livestock Comm'n Co.* applies to sanction); *Studt v. United States*, 607 F.2d 1216, 1218 (8th Cir. 1979) (sanction can be reviewed for arbitrariness and capriciousness).

In *Cross v. United States*, 512 F.2d 1212 (4th Cir. 1975) (in banc), the Fourth Circuit ruled that the Fifth Amendment guarantee of due process of law requires a court hearing to determine the validity of a sanction because the Agency proceedings do not include a hearing. The majority thought nonetheless that the Agency's sanction decision is entitled to "very great" weight and found that the proper scope of review is narrower than the scope of review of the finding of violation: "[t]o be 'valid,' a sanc-

---

**2.** Josephs' specific contentions are, first, that the Agency should have considered or accorded greater weight to circumstances that he maintains are extenuating and, second, that his disqualification will cause hardship to the residents of the neighborhood in which Jerry's Outlet is located. Josephs admits that these factors are not relevant to the finding of violation, but only to the determination of the appropriate sanction, *cf.* 7 C.F.R. § 278.6(e) (1981) (listing criteria for determination of penalty).

**3.** The Food Stamp Act of 1977, 7 U.S.C. §§ 2011–2027 (Supp. IV 1980), which took effect on October 1, 1977, superseded the Food Stamp Act of 1964, 7 U.S.C. §§ 2011–2026 (1976). The judicial review provisions of the old Act, 7 U.S.C. § 2022 (1976), and the current Act, 7 U.S.C. § 2023 (Supp. IV 1980), are identical, so decisions construing § 2022 of the old Act are pertinent to our inquiry in this case, *but see* pages 798–799 *infra* (discussing legislative history of current Act).

tion must not be arbitrary and capricious, and a sanction is arbitrary and capricious if it is unwarranted in law or without justification in fact." *Id.* at 1218. This passage, of course, restates the standard of *Butz v. Glover Livestock Comm'n Co., supra.* Judge Widener, concurring in the judgment, thought that the majority's standard was too narrow and that Congress had intended that the reviewing court would apply the regulations independently to develop the sanction. 512 F.2d at 1219–20 (Widener, J., concurring); *accord, Martin v. United States, supra,* 459 F.2d at 302 (Edwards, J., dissenting).

The Fifth Circuit followed *Cross* in *Goodman v. United States,* 518 F.2d 505, 509 (5th Cir. 1975), holding that the Act authorized the reviewing court to determine the validity of the sanction independently. The court concluded that the proper standard for that determination is whether the sanction imposed is arbitrary and capricious. *Id.* at 511–12. Though this result apparently is like that reached in *Cross,* the Fifth Circuit standard of review may be the more exacting. *Compare Bruno's Inc. v. United States,* 624 F.2d 592 (5th Cir. 1980) (affirming district court reduction of sanction from 6-month suspension to letter of warning) *with Cross v. United States,* 538 F.2d 624 (4th Cir. 1976) (appeal after remand) (upholding sanction imposed by Agency).

Most of the cases cited in the preceding paragraphs were decided before the Act was comprehensively rewritten in 1977, *see* note 3 *supra.* The legislative history of the current Act fortunately provides some further guidance to the meaning of the troublesome trial de novo section, clarifying that Congress did not intend to afford de novo review of the sanction. The report of the House Agriculture Committee states:

The Committee wants to go on record as noting that, when there is imposition of disqualification for such period of time as may be determined in accordance with

regulations (and the regulations permit disqualification for a reasonable period up to three years) pursuant to section 12 of the bill, the Committee does not intend that, in the trial de novo in the United States district court or state court of the final administrative determination of disqualification, the sanction or period of disqualification imposed would itself be subject to judicial review as several courts have held that it is. [Citations omitted.] The trial de novo as set forth in section 14 should be limited to a determination of the validity of the administrative action, but not of the severity of the sanction. Review of the factual determination that a violation occurred is normal grist for the courts; review of the length of highly discretionary a [sic] sentence of disqualification is not.

H.Rep.No.464, 95th Cong., 1st Sess. 397–98, *reprinted in* 1977 U.S.Code Cong. & Ad. News 1704, 1978, at 2326–27.

▮▮▮▮ This passage, from a committee report recommending passage of the Act, is highly authoritative in determining the meaning of the review provision. *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 494 F.Supp. 1190, 1223 (E.D.Pa.), *appeal docketed,* No. 80–2080 (3d Cir. May 8, 1980). We consider this report to be contemporaneous legislative history,[4] despite the retention of the language of the review provision of the Food Stamp Act of 1964, 7 U.S.C. § 2022 (1976), because that language was consciously re-adopted by Congress in 1977. When Congress re-enacts statutory provisions, and the legislative history of the re-enactment reveals that Congress was aware of an existing administrative or judicial interpretation of those provisions, Congress is deemed to have ratified that interpretation. *United States v. Board of Comm'rs,* 435 U.S. 110, 134–35, 98 S.Ct. 965, 980–81, 55 L.Ed.2d 148 (1978); *Lorillard v. Pons,* 434 U.S. 575, 580–81, 98 S.Ct. 866, 869–70, 55

---

4. Legislative comments and interpretations that are not contemporaneous with the enactment of the statute in question are not authoritative. *County of Washington v. Gunther,* 452 U.S. 161, 176 n.16, 101 S.Ct. 2242, 2251 n.16,

68 L.Ed.2d 751 (1981); *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 354 n.39, 97 S.Ct. 1843, 1864 n.39, 52 L.Ed.2d 396 (1977).

L.Ed.2d 40 (1978). Concomitantly, when Congress explicitly disapproves an existing interpretation, its statement of the proper construction should be binding on the courts.

We conclude therefore that Josephs is not entitled to de novo review of the sanction of disqualification imposed on him. This conclusion does not mean that we should not review the sanction for the limited purpose of determining whether the Agency exceeded its statutory authority, *i.e.*, whether, under the standard of *Butz v. Glover Livestock Comm'n Co., supra,* the sanction is not valid. Indeed, we think that we are obliged to review the sanction to this extent since nothing in the Act or its legislative history suggests a departure from the usual standard of review of sanctions, *see Kulkin v. Bergland, supra,* 626 F.2d at 185. Because we think the Agency's determination clearly satisfies the *Butz* test, and Josephs does not assert otherwise, summary judgment must be granted for the Government.