**Jesus RIVERA**

v.

**UNITED STATES of America.**

**Civ. A. No. 84–3357.**

United States District Court,
E.D. Pennsylvania.

Oct. 4, 1985.

**36**

Mark S. Refowich, Easton, Pa., and Edward G. Ruyak, Bethlehem, Pa., for plaintiff.

Alexander Ewing, Jr. and James G. Sheehan, Asst. U.S. Attys., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

On July 11, 1984, the above captioned plaintiff filed a complaint against the United States of America, Department of Agriculture, Food and Nutrition Service (hereinafter FNS) seeking de novo review of his permanent disqualification from participation in the Food Stamp Program pursuant to the provisions of the Food Stamp Act, 7 U.S.C. § 2023. The matter was tried before the Court on September 11, 1985.

During the trial, testimony was presented by a number of witnesses on behalf of both parties. Evidence was also received in the form of a Stipulation of Facts submitted by the parties. They stipulated as follows:

1. Jesus Rivera is an individual d/b/a LaFavorita Grocery Store, located at 1053 E. 3rd St., Bethlehem, Pa.

2. Rivera was first approved for participation in the Food Stamp Program in 1969.

3. Rivera and his partner, Felix Curet, were disqualified from participation in the Food Stamp Program in 1973 for six (6) months based upon the sale of ineligible items.

4. Rivera was disqualified from participation in the Food Stamp Program in 1977 for six (6) months based upon sales of ineligible items.

5. Rivera was disqualified from participation in the Food Stamp Program in 1981 based upon the sale of ineligible items for a period of ninety (90) days.

6. Rivera was reauthorized to participate in the Food Stamp Program after his most recent disqualification on October 23, 1981.

7. Statistical data gathered by the Food and Nutrition Service of the Department of Agriculture demonstrates that Rivera's store, LaFavorita Grocery, had an unusually high rate of food stamp redemption compared to other stores in the area between October 23, 1981 and April 1, 1982.

8. On April 26, 1982, Food and Nutrition Service Food Program Specialist Gerald Repasky telephoned Jesus Rivera to discuss FNS limitations on sales under the food stamp program and the results of failure to comply with these limits, and this conversation was confirmed by letter dated April 29, 1982.

9. The letter dated April 29, 1982 from Donald M. Hardie, Officer in Charge, Philadelphia FNS Office to plaintiff was received by plaintiff.

10. On September 10, 1976, Hilda Curet sold the one-half (½) partnership interest of her deceased husband, Felix Curet, to Jesus Rivera and at that time the firm became a sole proprietorship instead of a partnership.

At trial, the United States presented evidence through two witnesses. In its case-in-chief, Carlos L. Gran, an investigator with the FNS, testified that he visited LaFavorita "undercover" six (6) times, and was allowed to purchase ineligible items on five (5) of those occasions, specifically on November 6, 8, 9, 15 and 16, 1983. The plaintiff in response to the Government's case relied upon the testimony of three (3) witnesses: Marilyn Nassry, Ires Cintron and Jesus Rivera. Ms. Nassry and Ms. Clintron testified as to the lack of alterna-

tive sources in the community for the purchase of the ethnic Hispanic foods sold by LaFavorita. In rebuttal to this testimony, Gerald Repasky testified as to the availability and proximity of such alternative sources. The plaintiff called upon Altagracia Nieves to rebut the testimony of Mr. Repasky.

Based upon the evidence presented at trial, we now make the following

## FINDINGS OF FACT

1. On November 4, 6, 8, 9, 15 and 16, 1983, LaFavorita was visited by a representative of the FNS, specifically, Carlos Gran.

2. On November 6, 8 and 9, 1983, employees of LaFavorita allowed Gran to purchase all of the ineligible items he presented to them.

3. On November 15, 1983, employees of LaFavorita allowed Gran to purchase certain ineligible items, but at the same time refused to allow him to purchase certain other ineligible items, specifically, a "socket wrench set" and "ten packs of cigarettes".

4. On November 16, 1983, employees of LaFavorita allowed Gran to purchase certain ineligible items, but at the same time refused to allow him to purchase a "teapot", another ineligible item.

5. There are at least five (5) other stores in the vicinity of LaFavorita which accept food stamps.

6. These stores sell many, though not all, of the same ethnic Hispanic foods sold by LaFavorita.[1]

## DISCUSSION

The plaintiff asserts a multitude of reasons as to why his permanent disqualifica-

1. The above Findings of Fact, of course, supplement the Stipulation of Facts submitted by the parties.

2. While the Government conceded it bore the burden of proof in this case, we note authority to the contrary to the effect that it is the individual challenging the Department's action who must prove by a preponderance of the evidence that "the agency's determination ... is factually

tion by the FNS should not be upheld by this Court. Before we state our conclusions of law, a number of these challenges merit discussion, and so will be considered.

In his complaint, the plaintiff alleged the action of the FNS was erroneous because: (1) the decision was not supported by substantial evidence, (2) the penalty imposed was based upon prior violations and suspensions for which the plaintiff did not have legal representation, and (3) the penalty imposed was excessive and would work a hardship upon the community. Plaintiff's counsel argued further during trial that this Court should overturn the decision of the FNS for the following reasons: (1) the Food Stamp Act, specifically 7 U.S.C. § 2021, as amended in 1982, constitutes an *ex post facto* law if violations occurring before the amendment are considered in assessing penalties for violations committed after the amendment, (2) the FNS improperly considered the 1973 violation in computing the penalty to be assessed for the 1983 violations since LaFavorita at that time operated as a partnership as opposed to its present-day operation as a sole proprietorship, and (3) the violations were due to a lack of supervision rather than any intentional or deliberate misconduct on the plaintiff's part.

### A. The substantial evidence claim

The Government conceded at trial that it bore the burden of proving by a preponderance of the evidence that the plaintiff violated the Food Stamp Act and its implementing Regulations, specifically 7 C.F.R. 271.2 and 278.2(a).[2] As indicated by the Findings of Fact, we have concluded the Government has met this burden and has, in fact, established beyond any doubt

incorrect" and that "failure on the part of the plaintiff to meet this burden will require the reviewing court to uphold the administrative determination". *Han v. Food and Nutrition Service of United States Department of Agriculture,* 580 F.Supp. 1564 (D.N.J.1984). See also, *Bush v. United States,* 473 F.Supp. 715 (E.D.Pa.1979). Our decision would not in any way be altered by application of this standard however.

that employees of LaFavorita sold ineligible items to an FNS investigator on five (5) separate occasions in violation of 7 C.F.R. 271.2 and 278.2(a). Therefore, we also conclude that the food stamp officer's finding that the plaintiff violated the Act and its implementing regulations is supported by substantial evidence.

### B. The lack of counsel

■ The plaintiff, as stated earlier, also asserted in his complaint that since he was not represented by counsel during any of the proceedings leading to suspensions in 1973, 1977 and 1981, those disqualifications should not be considered in determining the penalty to be assessed for the most recent violations. Plaintiff's counsel did not address this issue during trial nor has he cited any authority in support of his contention. Perhaps this is because such a claim is "clearly inappropriate in the context of civil proceedings" such as this. *Bailey v. County of York*, 580 F.Supp. 794 (M.D.Pa.1984), *rev'd on other grounds* 768 F.2d 503 (3d Cir.1985). Further, there is nothing in the record to indicate the plaintiff's failure to retain counsel was other than his own conscious choice.

### C. The ex post facto claim

■ Plaintiff's counsel at trial argued that Section 2021 constitutes an *ex post facto* law since it allegedly increases the penalty for the violations which occurred in 1973, 1977 and 1981. There is no merit to this argument, however, since the *ex post facto* provision of the Constitution applies only to penal legislation, *Thompson v. Sawyer*, 678 F.2d 257 (D.C.Cir.1982); *Ames v. Merrill, Lynch, Pierce, Fenner & Smith*, 567 F.2d 1174 (2nd Cir.1977), and we do not construe the provisions of Section 2021 to constitute a penal law. While the Act may establish certain penalties for its violation, the statute is strictly civil in its nature.[3]

### D. The hardship upon the community claim

The plaintiff also argued that because his disqualification would work a substantial hardship upon the food stamp households surrounding LaFavorita, the FNS should have simply assessed a civil money penalty against him rather than permanently disqualifying him from participation in the Program.

Section 2021(a) of the Food Stamp Act provides that

Any approved retail food store or wholesale food concern may be disqualified for a specified period of time from further participation in the food stamp program, or subject to a civil money penalty of up to $10,000 for each violation if the Secretary determines that its disqualification would cause hardship to food stamp households, on a finding, made as specified in the regulations, that such store or concern has violated any of the provisions of this chapter or the regulations issued pursuant to this chapter.

Subsection (b) provides further that

Disqualification under subsection (a) of this section shall be ...

(3) permanent upon the third occasion of disqualification ...

Prior to imposing the penalty of permanent disqualification, the FNS determined on the basis of its field representative's reports that no substantial hardship would be caused to the community surrounding LaFavorita should it be permanently disqualified from participation in the Program. The plaintiff, of course, disagrees. He argues that while the food stamp households may be able to obtain food from other stores in the area, they will not be able to obtain the same ethnic Hispanic foods. He also contends that the penalty assessed by the FNS should be subject to the same standard of *de novo* review as the Department's determination that he violat-

---

**3.** The plaintiff has made no argument that the Act in any way violates due process because of any retroactive effect it may have.

ed the Act. We disagree with both of these contentions.

■ Before reviewing the Court's conclusion in light of the evidence adduced at trial, we digress briefly to delineate the standard of review to be applied to the penalty imposed. As recognized by this Court in *Bush v. United States, supra,* (Broderick, J.), the penalty assessed by the Department is not to be altered unless it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law". *Id.* at 717. Our examination of the sanction imposed by the FNS therefore, is strictly limited to the question of whether the requirements of due process have been satisfied. In making that determination, we look to the opinion of the Fourth Circuit Court of Appeals in *Cross v. United States,* 512 F.2d 1212 (4th Cir.1975), relied upon by almost every other court that has considered this question.

Due process on the issue of sanction requires that the punishment follow rationally from the facts, be authorized by the statute and regulations, and aim toward fulfillment of the Act's purposes ... 'the Secretary's choice of sanction ... (is) not to be overturned unless ... it (is) "unwarranted in law or ... without justification in fact ..." '.
We deem all three of these expressions synonomous and they define the due process which we hold must be afforded. *Id.* at 1217–18. See also *Josephs v. United States,* 532 F.Supp. 795 (E.D.Pa.1982).

Plaintiff's standard of review argument appears related to his claim that the statute constitutes an *ex post facto* law. We understand plaintiff's counsel to argue that if we consider the disqualifications rendered under the "old act", we must also apply some "older" standard, purportedly applied by other courts, of reviewing the penalty under the same standards as the Department's determination that the act had been violated. See *Josephs v. United States, supra,* and cases cited therein.

However, we find no merit to this contention. First, insofar as this argument is another facet of his *ex post facto* claim, it is unavailing for the reasons noted above. Second, and more importantly, plaintiff's basic premise, that there was once a different standard of review, is erroneous. Although the legislative history of the 1982 amendments, discussed by Judge Becker in *Josephs,* specifically repudiated the *de novo* review of sanctions urged by the plaintiff here, most courts were already applying the arbitrary and capricious standard described in *Bush* and *Cross, supra.* See also, *Bruno's, Inc. v. United States,* 624 F.2d 592 (5th Cir.1980). Third, and finally, even under the standard of review urged upon us by the plaintiff, we believe the Department acted completely within the bounds of its discretion.[4] We now consider whether the dictates of due process were, in fact, satisfied.

■ Normally, when determining whether the action of an agency is arbitrary or capricious, as required, for example, by the Administrative Procedure Act, a court examines only the administrative record upon which the agency based its decision. Some courts have expressed concern that this course raises due process concerns in cases such as this where the entity disqualified from participation was not given a hearing on the administrative level. See *Collazo v. United States,* 668 F.2d 60, 66, fn. 10. Consequently, we allowed the introduction of testimony at trial on the issue of hardship to the community, and have based our decision on the full record as developed during the trial.

Conflicting evidence was presented as to the hardship which would be inflicted upon the community if the plaintiff were permanently disqualified from participation in the Program. The plaintiff's witnesses testified that people would be required to travel much farther distances, approximately two and one-half (2½) to three (3) miles accord-

---

**4.** We do not interpret Judge Becker in *Josephs* as applying some new standard of review, but rather as simply adopting the standard applied prior to the 1982 amendment of the Act, which, in turn, is the same standard we apply today.

ing to their estimates, in order to shop in a store comparable to that of LaFavorita, *i.e.*, a store specializing in the sale of ethnic Hispanic foods. The plaintiff's witnesses also testified that this other store was located in a high crime area. The Government's witness, Gerald Repasky, testified, however, that there were at least five (5) other stores in the vicinity of LaFavorita which, when considered together, sold many, though perhaps not all, of the same ethnic foods carried by the plaintiff.[5] (See Findings of Fact # 5 and # 6). Since the evidence supports the conclusion that there are substantial alternative sources for the purchase of the same foods sold by the plaintiff, we concur in the Department's determination that plaintiff's disqualification will not work a substantial hardship upon the community. The Department's decision followed rationally from the facts, was authorized by the statute and regulations and aimed toward fulfillment of the Act's purposes, and, therefore, was neither arbitrary nor capricious nor violative of due process. See *Collazo v. United States, supra.*

### E.   The excessiveness of the penalty

■ The plaintiff next claims that the penalty imposed upon him was excessive. Section 2021(b)(3), cited earlier, provides that a disqualification under subsection (a)

shall be "permanent upon the third occasion of disqualification ...". The plaintiff, as stipulated by the parties, has been disqualified on three (3) prior occasions. The Department seeks, therefore, to make his disqualification permanent not upon his third, but rather upon his fourth, disqualification under subsection (a).[6] We, therefore, find the plaintiff's permanent disqualification from participation in the Program not only warranted, but in fact mandated by the statute.[7]

### F.   The lack of supervision versus intentional misconduct

■ Plaintiff's final argument is that the sale of ineligible items occurred not as the result of any intentional misconduct or purposeful policy, but rather due to a lack of supervision of his employees. The plaintiff testified that he worked as a truck driver for the Bethlehem Steel Corporation full-time during weekdays, and worked at the store at night and on weekends. When he was not at the store, it was operated by his daughter, on occasion, or by his employees. The Government has introduced no evidence that the plaintiff had any actual knowledge of his employees' conduct or in any way instructed or encouraged them to accept food stamps for the sale of ineligible items. It does not, in fact, appear that the

5. The plaintiff did not argue the surrounding food stamp households would incur a substantial hardship in obtaining *food*. Rather, he argued that his disqualification would make it substantially harder for the households to obtain the same *ethnic foods* as sold by LaFavorita. Because we have concluded that surrounding stores offer many of the same foods sold by plaintiff, we need not reach the issue whether a court should consider the ethnicity factor in reviewing the hardship that would be imposed upon a community due to a store's disqualification from participation in the Program.

6. The Act was amended in 1982 to include the provisions of subsection (b). Thus, on the occasion of the plaintiff's third disqualification in 1981, the Department operated under the old provisions of the Act which provided "disqualification under this section would be for such period of time as might be determined in accordance with regulations issued pursuant to this chapter".

7. Plaintiff's counsel argued at trial that the FNS should not have considered the 1973 disqualification when determining the penalty to be assessed for his most recent violations since LaFavorita operated at that time as a partnership as opposed to its present status of sole proprietorship. (See Stipulations of Fact # 3 and # 10). We find no merit in this argument. First, the plaintiff was a partner in the business in 1973. He was one of the two individuals responsible for the operation of the store, and, therefore, one whose responsibility it was to insure that no ineligible items were sold in exchange for food stamps. His responsibility for the violations which led to the 1973 disqualification was joint and several with that of his partner, and his partner's demise does not in any way diminish that responsibility. Second, even if the 1973 disqualification is disregarded, this would still be the plaintiff's third disqualification under subsection (a) and, therefore, the plaintiff's argument is essentially irrelevant.

plaintiff was even in the store when the violations occurred.

Although the Third Circuit has not as yet considered the question, a number of other courts have addressed the issue of employer liability for the conduct of their employees which violates the Food Stamp Act and its implementing regulations. See *PTF Enterprises, Inc. v. United States*, 558 F.Supp. 1317 (W.D.Mo.1983). The First, Second and Tenth Circuits have held that an employer is liable for the conduct of his employees, even though he had no knowledge of same, under the theory of *respondeat superior*. See *Wolf v. United States*, 662 F.2d 676 (10th Cir.1981); *Willy's Grocery Store v. United States*, 656 F.2d 24 (2nd Cir.1981); *Kulkin v. Bergland*, 626 F.2d 181 (1st Cir.1980); and *J.C.B. Super Markets, Inc. v. United States*, 530 F.2d 1119 (2nd Cir.1976). As stated by the First Circuit,

> Plaintiff's personal non-involvement would not prevent his store's disqualification. The disqualification section, 7 U.S.C. § 2021 ..., requires only 'a finding ... that such *store* ... has violated any of the provisions of (the Food Stamp Act) or the regulations issued pursuant to (the Act).' (Emphasis added). An improper sale by a cashier is sufficient to establish a violation.

*Kulkin v. Bergland*, 626 F.2d at 1983.

We accept this construction of the Act in a case such as this where the conduct of the employee which violated the Act was for the benefit of the store.[8] To follow the argument urged by plaintiff's counsel would allow all such employers to adopt a "see no evil, hear no evil" policy which would emasculate the enforcement provisions of the Act and the regulations issued pursuant thereto.

Based upon our examination of the Stipulation of Facts submitted by the parties, our Findings of Fact and the applicable law discussed above, we now reach the following

## CONCLUSIONS OF LAW

1. The plaintiff violated the Food Stamp Act, 7 U.S.C. § 2011 et seq. and its implementing regulations, specifically 7 CFR 271.2 and 278.2(a), by the sale of certain ineligible items to an FNS investigator on November 6, 8, 9, 15 and 16, 1983.

2. The FNS was required to permanently disqualify the plaintiff from participation in the Program pursuant to 7 U.S.C. § 2021(b) and 7 CFR 278.6(e)(1), this being the plaintiff's fourth disqualification from participation in the Program under 7 U.S.C. § 2021(a).

3. The decision of the FNS to permanently disqualify the plaintiff from participation in the Program pursuant to 7 U.S.C. § 2021(a), was not violative of due process nor arbitrary and capricious.

4. 7 U.S.C. § 2021(b) does not constitute an *ex post facto* law.

5. The 1973 disqualification of the plaintiff and his partner from participation in the Program was assessable against the plaintiff in determining the penalty to be assessed for his most recent violations.

6. The plaintiff is liable for the conduct of his employees which violates the Act and its regulations where such conduct is for the benefit of the store, even though the plaintiff may have had no knowledge of same.

7. The plaintiff had no right to counsel during the proceedings leading to his disqualifications from participation in the Program in 1973, 1977 and 1981.

An appropriate order follows.

---

**8.** The Tenth Circuit in *Badwan v. United States*, 541 F.2d 1388 (10th Cir.1976) held the employer was not responsible for its employees' violations of the Act. *Badwan* is factually distinguishable from this and the other cases cited above. The employee in *Badwan* purchased coupons at a discount in violation of the Act, placed the coupons in the store's cash drawer and withdrew cash equal to the face value of the coupons. The employee's conduct was strictly for his own personal gain, without the employer's knowledge, and in no way benefitted the store. This, of course, is not the case here. See also, *Willy's Grocery, supra*.

**42**

## ORDER

AND NOW, this 4th day of October, 1985, IT IS ORDERED that judgment is hereby entered in favor of the defendant United States of America, Department of Agriculture, Food and Nutrition Service, and against the plaintiff Jesus Rivera.