**IN SUK PAK t/d/b/a Penny's Food Market, Plaintiff,**

v.

**UNITED STATES of America DEPARTMENT OF AGRICULTURE, Defendant.**

**Civ. A. No. 87–0342.**

United States District Court,
M.D. Pennsylvania.

Nov. 30, 1987.

Katherene E. Holtzinger Conner, York, Pa., for plaintiff.

Robert J. DeSousa, Scranton, Pa., for defendant.

## MEMORANDUM

RAMBO, District Judge.

Before the court is defendant's motion for summary judgment. The motion has been fully briefed and is ripe for disposition.

*Background*

In Suk Pak is an individual who owns and operates Penny's Food Market in York, Pennsylvania. Plaintiff was approved for participation in the food stamp program which is administered by the defendant United States Department of Agriculture. On January 14, 1985 a representative of defendant wrote to plaintiff, warning plaintiff about possible violations of the food stamp program's regulations. The letter indicates that another representative of defendant had visited plaintiff's store on January 9, 1985 and discussed with plaintiff the comparatively high rate of food stamp redemption that was occurring at plaintiff's store. During that visit, according to the letter, defendant's agent warned plaintiff that any further violations could result in plaintiff's disqualification from the food stamp program. The agent also reviewed with plaintiff applicable food stamp regulations.

In July, 1985 defendant received an anonymous complaint to the effect that nonfood items were being sold for food stamps in plaintiff's store. A representative of defendant visited the store on July 11, 1985 and discussed food stamp regulations with plaintiff and his wife. The record of the July 11, 1985 visit shows that the rate of food stamp redemption per the amount of food sales was higher than the average redemption rate of other stores in the area.

Between January 16, 1986 and February 8, 1986 an investigator on behalf of defendant visited plaintiff's store four times and purchased a total of thirty-three items. On the first visit the investigator purchased three nonfood items with food stamps. On the second visit he purchased three nonfood items with food stamps. Three nonfood items were purchased with food stamps on the third visit, and four nonfood items were purchased with stamps on the fourth visit. Records were kept by the investigator of each of these visits. Those records indicate that the nonfood items purchased by the investigator with food stamps included disinfectant spray, plastic spoons, bar soap, toothpaste, tissue, and coffee filters.

On July 3, 1986 defendant wrote to plaintiff and his wife and informed them of the four visits that defendant's investigator had made in January and February of that year. The letter advised plaintiff that the sale of nonfood items to the investigator in exchange for food stamps was in violation of food stamp regulations. Plaintiff was given the opportunity to respond to the charges contained in the letter.

Availing himself of that opportunity plaintiff informed defendant that the clerks who took food stamps from defendant's investigator were plaintiff's brother-in-law and sister-in-law. Plaintiff explained that the clerks had recently arrived from Korea and did not understand how to speak English. According to plaintiff his relatives were "helping out" in the store, and the problem had been "taken care of." Defendant's Exhibit 3 at 3.26.

Following plaintiff's reply to the letter charging him with regulation violations, defendant's officer in charge of the investigation of plaintiff's store prepared a case summary for defendant's regional director. The summary discussed the compliance visit of January 9, 1985 and the confirmation letter written two days later. Also noted in the summary was the excessive rate of redemption occurring at plaintiff's store and the four shopping visits made by defendant's investigator in January and February, 1986. Upon consideration of these

factors and plaintiff's explanation for the improper food stamp redemptions, the officer-in-charge reached the following conclusion: "Based on FNS Handbook 318, Section 1220(F), a *six-month* disqualification is being recommended rather than a one-year period. It appears that the violations were due to carelessness or poor supervision." Defendant's Exhibit 3 at 3.25 (emphasis in original).

For reasons which are not apparent on the record before the court, the recommendation of the officer-in-charge was disregarded. Defendant notified plaintiff on August 26, 1986 that it was disqualifying him from participation in the food stamp program for a period of three years as a result of plaintiff's or plaintiff's employees' violations of the regulations governing the food stamp program. Plaintiff's request for a review of this decision was granted, but the decision was affirmed by way of a letter to plaintiff and his wife on December 17, 1986. The final decision to disqualify plaintiff for three years was again based on a finding by defendant that plaintiff had been adequately warned of possible violations and that plaintiff's employees had improperly accepted food stamps for non-food items on four occasions in January and February, 1986. *See* Defendant's Exhibit 3 at 3.5.

As a result of defendant's December 17, 1986 decision, plaintiff brought suit against defendant in the Common Pleas Court of York County, Pennsylvania. The York County Court entered an order staying the disqualification pending the resolution of plaintiff's lawsuit. Defendant then removed the action to this court and has now moved the court for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff asks that the court deny defendant's motion and to order that the record be supplemented so that the appropriate penalty can be determined. In the alternative plaintiff requests the court to impose a less severe sanction on plaintiff on the basis of the record as it stands. The issue which the court must address in disposing of defendant's motion is whether the disqualification of plaintiff for three years was arbitrary and capricious.

*Discussion*

■ Summary judgment will be rendered by the court if the materials of record show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Inferences to be drawn from the facts must be viewed in the light most favorable to the opponent of the motion. *Board of Education v. Pico,* 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). In the context of reviewing an administrative decision the court may consider a certified copy of the administrative record in determining whether summary judgment is appropriate. *Langston v. Johnson,* 478 F.2d 915, 917 (D.C.Cir.1973). In the case at bar both parties rely on the administrative record on which the defendant based its decision and which has been submitted to the court, and the veracity of the record is properly certified. Fed.R.Civ.P. 44(a). The court finds that there is no genuine issue of material fact; thus, the court must only decide whether defendant is entitled to judgment as a matter of law.

The Act of Congress which created the food stamp program is found in its amended form at 7 U.S.C. §§ 2011–2029. Regulations promulgated by defendant pursuant to authority granted for that purpose in the Food Stamp Act are contained in 7 C.F.R. Parts 271–285. The purpose of Congress in creating the food stamp program was "to safeguard the health and well-being of the Nations' population by raising the levels of nutrition among low-income households." 7 U.S.C. § 2011; 7 C.F.R. § 271.1(a). The program enables eligible households to receive coupons, or food stamps, which they may use only to purchase food from stores participating in the program. The coupons are then redeemed from the stores by defendant. 7 U.S.C. § 2013(a). "Food" is generally defined to be food or food products for home consumption, excluding alcoholic beverages and tobacco. 7 U.S.C. § 2012(g).

Participating stores which violate provisions of the Food Stamp Act or the regula-

tions promulgated thereunder may be penalized in two ways. Defendant may disqualify the store from participation in the program or subject the store to a civil money penalty. 7 U.S.C. § 2021(a). A civil money penalty is appropriate only when disqualification of the store would cause hardship to food stamp households. *Id.;* 7 C.F.R. § 278.6(f). The first disqualification of a store may be imposed "... for a reasonable period of time, of no less than six months nor more than five years, ..." 7 U.S.C. § 2021(b)(1).

More specific guidelines for the disqualification of stores are provided in the regulations promulgated pursuant to the Food Stamp Act. A first-time disqualification for three years is warranted, in part, if "[i]t is the firm's practice to commit violations such as the sale of common nonfood items in amounts normally found in a shopping basket and the firm was previously advised of the possibility that violations were occurring and of the possible consequences of violating the regulations...." 7 C.F.R. § 278.6(e)(3)(i). Shorter first-time disqualifications may be imposed in the following situations:

> (4) Disqualify the firm for 1 year if it is to be the first sanction for the firm and the ownership or management personnel of the firm have committed violations such as the sale of common nonfood items in amounts normally found in a shopping basket, and FNS had not previously advised the firm of the possibility that violations were occurring and of the possible consequences of violating the regulations.

> (5) Disqualify the firm for 6 months if it is to be the first sanction for the firm and the evidence shows that personnel of the firm have committed violations such as but not limited to the sale of common nonfood items due to carelessness or poor supervision by the firm's ownership or management.

7 C.F.R. § 278.6(e)(4), (5).

Congress has mandated that judicial review of administrative action taken by defendant against a store for the violation of food stamp regulations should be in the form of a trial de novo. 7 U.S.C. § 2023(a). Normally, review of a sanction imposed by defendant consists of two steps. First, the court addresses the question of whether the violation of which the store is accused did occur. If that question is answered affirmatively, the court then considers whether the penalty imposed is valid. *Plaid Pantry Stores, Inc. v. United States,* 612 F.Supp. 680, 684 (D.Ore.1985) (citation omitted), *aff'd,* 799 F.2d 560 (9th Cir.1986).

In the case at bar plaintiff does not dispute defendant's finding that a violation of the Food Stamp Act occurred. Plaintiff contests only the severity of his three-year disqualification from the food stamp program. Although 7 U.S.C. § 2023(a) provides for a trial de novo when a district court is reviewing administrative action, the legislative history of the Food Stamp Act indicates and several courts have found that a court's review of the severity of the sanction itself should not be by trial de novo but should be limited to a determination of whether the imposition of the sanction was arbitrary and capricious. H.R. No. 464, 95th Cong., 1st Sess., *reprinted in* 1977 U.S. Code Cong. & Admin. News 1704, 1978, 2326, 2327; *Hy Chan Banh v. United States,* 814 F.2d 1358, 1361 (9th Cir.1987); *Willy's Grocery v. United States,* 656 F.2d 24, 26 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1011, 71 L.Ed.2d 301 (1982); *Bruno's Inc. v. United States,* 624 F.2d 592, 594 (5th Cir.1980); *Rivera v. United States,* 630 F.Supp. 35, 39 (E.D.Pa.1985); *Plaid Pantry,* 612 F.Supp. at 684; and *Josephs v. United States,* 532 F.Supp. 795, 799 (E.D.Pa.1982).

The Third Circuit Court of Appeals has recently outlined the following test for determining whether agency action is arbitrary and capricious: "Agency action may not be set aside on grounds that it is arbitrary and capricious if the action is rational, based on relevant factors, and within the agency's statutory authority." *Frisby v. United States Dept. of Housing and Urban Development,* 755 F.2d 1052, 1055 (3d Cir.1985). The *Frisby* court also noted the general principle that agency action is

entitled to a presumption of correctness but stated that this presumption does not prevent a reviewing court from thoroughly examining the agency action. *Id.* In examining defendant's action in the case at bar the court will consider each of the three parts of the *Frisby* test for "arbitrary and capricious" action:

### 1. *Relevant Factors*

In considering whether agency action was based on relevant factors, the reviewing court normally must determine whether the agency relied on factors Congress intended it to consider. If the court determines that the agency relied on factors Congress did not intend for it to consider, or has failed to consider an important aspect of the problem, then the action should be set aside as arbitrary and capricious.

*Id.*

From the administrative record in the case at bar it appears that defendant relied chiefly on two factors in deciding to disqualify plaintiff's store from disqualification in the food stamp program. One factor was the letter to plaintiff on January 14, 1985 which discussed the high rate of food stamp redemption at plaintiff's store and warned plaintiff about possible violations of food stamp regulations. The second factor was the sale of nonfood items in exchange for food coupons by plaintiff's employees over the course of four visits to plaintiff's store by defendant's investigator. The regulation found at 7 C.F.R. § 278.6(e)(3)(i) conditions the imposition of a three-year disqualification on a finding that it is a store's practice to sell nonfood items in amounts normally found in a shopping basket and that the store was previously advised of the possibility of violations. In light of these conditions the court finds that the factors on which defendant based its decision were relevant ones.

### 2. *Rational Action*

"In considering whether agency action is rational, a reviewing court must determine whether the agency considered the relevant data and articulated an explanation establishing a 'rational connection between the facts found and the choice made.'" *Frisby,* 755 F.2d at 1055, *quoting, Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962). Having already determined that defendant considered relevant data, the court must simply determine whether defendant established a rational connection between that data and the three-year disqualification.

In defendant's letter of December 17, 1986 to plaintiff and his wife explaining the disqualification, defendant's Administrative Review Office commented on the manner in which efforts were made to familiarize plaintiff and his wife with the regulations governing the food stamp program. According to the letter, defendant's representatives had met with plaintiff several times and then had written the letter of January 14, 1985 concerning the store's unusually high redemption rate. The letter noted that despite these efforts violations of the regulations were found by defendant's investigator to have occurred on all four occasions that he visited and shopped at the store. Reviewing the necessity of enforcing strict compliance by participating stores with the regulations of the food stamp program, the Administrative Review Officer concluded that plaintiff's store should be disqualified despite plaintiff's explanation that the improper sales were committed by employees who did not speak English well and despite the Officer's recognition that disqualification would cause financial hardship to plaintiff and some inconvenience to plaintiff's food stamp customers. The Officer summarized his position as follows:

> Based on a careful review of all the information before me, I must conclude that the violations, substantially as charged, did, in fact, occur at your store. It is also clear that these violations were committed with complete disregard for program regulations, and all were easily preventable with reasonable care. The violations were flagrant in nature, repetitive, and extremely damaging to the program.

Defendant's Exhibit 3 at 3.7. On the basis of this conclusion the Administrative Re-

view Officer determined that the three-year disqualification was fair and proper according to 7 C.F.R. § 278.6(e)(3).

Upon reviewing defendant's decision the court concludes that defendant established a rational connection between the needs of the food stamp program, the improper sales of nonfood items, the previous warning to plaintiff and the choice to disqualify plaintiff's store from the food stamp program for three years. The conclusion that it is the practice of plaintiff's store to sell nonfood items in amounts normally found in a shopping basket is rationally connected to the undisputed fact that plaintiff's employees accepted food stamps for every nonfood item defendant's investigator attempted to purchase on four visits to plaintiff's store [1] and the fact that the nonfood items purchased with food stamps represented over thirty percent of all the items purchased by the investigator.

Also, defendant's finding that plaintiff had been warned previously was rationally connected to the undisputed fact that defendant sent plaintiff a letter on January 14, 1985 advising him of the possibility of regulation violations. Finally, the imposition of a disqualification rather than a civil money penalty was rationally connected to defendant's finding that there are three comparable stores participating in the food stamp program which are located either on the same block as plaintiff's store or within several blocks of the store and that, therefore, the disqualification of plaintiff's store would not cause hardship to food stamp households.[2] *See* Defendants Exhibit 3 at 3.25.

Plaintiff relies heavily on *Plaid Pantry Stores, supra,* in which the district court of Oregon decided that the disqualification of a store for three years was arbitrary and capricious. In *Plaid Pantry* the court disagreed with the finding of the Food and Nutrition Service ("FNS") that it was the plaintiff's store's practice to sell nonfood items for food stamps. The court concluded upon its review of the facts that the store management had done everything in its power to train its employees and to prevent the violation of the food stamp program regulations. Additionally, the court found that the FNS had failed to consider several important factors. On the basis of the conclusions, along with the court's finding that a prior warning letter sent to the store was inadequate, the court decided that the three-year disqualification of the store was arbitrary and capricious. *Id.,* 612 F.Supp. at 686, 687.

■ For several reasons, this court declines to adopt the reasoning and conclusions in *Plaid Pantry.* In the first place the case is factually distinct from the case at bar. There is no evidence that the store involved in the case at bar has a high turnover of personnel as did the store in *Plaid Pantry,* that plaintiff had extensively trained his clerks in the food stamp regulations, or that the warning letter received by plaintiff was directed generally to violations other than those for which plaintiff was ultimately disqualified. Secondly, it appears that the court in *Plaid Pantry* did not conduct the same type of inquiry which *Frisby* requires this court to conduct. Although the *Plaid Pantry* court ostensibly framed its inquiry on the "arbitrary and capricious" standard, it did not confine itself to determining whether there was a rational connection between the relevant data and the action of the FNS. Rather, the court appears to have examined the facts and substituted its own judgment for that of the FNS. In this court's opinion such judicial review goes beyond the test set forth in *Frisby* for determining whether agency action was arbitrary and capricious and is, therefore, not proper.

1. Practice is defined as "the usual manner in which personnel of a firm or store accept food coupons as shown by the actions of the personnel at the time of the investigation." 7 C.F.R. § 271.2.

2. "FNS may impose a civil money penalty as a saction in lieu of disqualification *only* when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to food stamp households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices." 7 C.F.R. 278.6(f).

### 3. Scope and Authority

"In considering whether agency action was within the scope of its statutory authority, the reviewing court must first construe the relevant statute to determine the scope of the agency's authority and discretion and then must determine whether the action in question lies within that scope." *Frisby,* 755 F.2d at 1055.

In the Food Stamp Act Congress extended to the Secretary of Agriculture the authority to formulate and administer the food stamp program. 7 U.S.C. § 2013(a). Pursuant to that authority, regulations were promulgated which govern the administration of the program. As is apparent from those regulations, the responsibilities of program administration include the disqualification of participating stores that violate the program regulations. Therefore, in disqualifying plaintiff's store following a rational application of the relevant factors set forth in the regulations, defendant was acting within its statutory authority.

### Conclusion

Having found that defendant's disqualification of plaintiff for three years was not arbitrary or capricious, the court concludes that defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment will be granted.