**Milan CVIKICH, Petitioner,**

v.

**RAILROAD RETIREMENT BOARD, Respondent.**

No. 87–3597.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) April 6, 1988.

Decided Oct. 31, 1988.

As Amended Nov. 9, 1988.

Milan Cvikich, Marlton, N.J., pro se.

Stanley Jay Shuman, Railroad Retirement Bd., Chicago, Ill., for respondent.

Before MANSMANN, HUTCHINSON and HUNTER, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

### I.

*Pro se* petitioner Milan Cvikich (Cvikich) seeks to overturn a decision of respondent Railroad Retirement Board (Board). The Board had affirmed an Appeals Referee's order. The referee had in turn denied Cvikich's appeal from an administrative ruling rejecting his request for recalculation to increase his Railroad Retirement annuity. The Board had certified the annuity award as of November 1, 1974.

Cvikich's annuity falls under the disability provisions of the Railroad Retirement Act (RRA), codified at 45 U.S.C.A. §§ 231

*et seq.* (West 1986 & Supp.1988).[1] The amount of Cvikich's annuity has become less than he would currently receive if he were eligible for disability benefits under the Social Security Act (SSA) 42 U.S.C.A. § 402(d) (West Supp.1988). He bases his claim for recalculation on the birth of a child in 1978, after the 1975 decision awarding him an annuity retroactive to November 1, 1974, and a longstanding proviso to RRA, referred to as the "special guaranty clause." That clause is intended to prevent certain RRA annuitants from receiving less than they would if they were eligible for similar benefits under SSA.

The "special guaranty's" poor draftsmanship, coupled with the Board's confusing regulations and explanatory publications, easily could lead a worker and his family to believe that all RRA annuitants will always receive benefits at least equal to those provided by SSA. The text of the proviso, however, allows an upward recalculation of a finally determined RRA annuity for certain after-married spouses, but for no after-born children. Railroad retirees may find it difficult to understand the logic or equity of providing for after-married spouses, but not for after-born children. Nevertheless, since the statute so provides, the remedy lies with Congress. We must follow it and affirm the Board's decision.

The Board had jurisdiction pursuant to 45 U.S.C.A. §§ 355(b)–(e) (West 1986), after the Appeals Referee waived formality and timeliness on the claimant's administrative appeal. This Court has jurisdiction to review the Board's decision pursuant to 45 U.S.C.A. § 231g, incorporating 45 U.S.C.A. § 355(f) (West 1986). Since the question before us is one of statutory construction, our scope of review is plenary.

## II.

Cvikich was born on August 9, 1934. He worked for railroads from May 24, 1955, until May 7, 1974, when he became disabled with schizo-affective schizophrenia. He

was awarded an employee annuity in 1975. It became final, retroactive to November 1, 1974, upon expiration of the statutory waiting period. *See* 45 U.S.C.A. § 231b(a)(2) (West 1986).

When Cvikich applied for his annuity he had been separated from his wife, Mary M. Christy Cvikich, for more than eight years, and their only child, Mary Catherine Cvikich, was 20 years old. On July 31, 1978, he became the father of Milan Christopher Cvikich Heggan· (Milan). Milan's mother is Gloria Jean Heggan (Heggan). Heggan and Cvikich were not married.

Milan lived with Heggan until May 1982, when he went to live with Cvikich. Cvikich then made informal applications for an increased annuity, but was told that his son could not be considered since Milan had not yet been born in 1974 and Cvikich had not yet reached age 62 at the time of his informal application. In December 1982, Milan returned to Heggan. In February 1985, Cvikich again informally requested an increased annuity because of Milan. The Board informed him on April 26, 1985, that he was not eligible. He wrote back in July 1985 stating an intent to appeal. The Board did not inform him until January 31, 1986, that he could not appeal because he had made no formal request. Cvikich filed a formal appeal on April 1, 1986.

Despite the lack of a formal denial or reconsideration, an Appeals Referee elected to hear the appeal because "[r]equiring the appellant to file a claim in order to be denied at this point would exalt form over substance." She found that under the RRA, new, nondisabled children could not cause a recalculation of an annuity until the annuitant reached retirement age. She therefore denied Cvikich increased benefits. The Board affirmed the Referee's decision on April 6, 1987.

Cvikich timely filed a petition for review on September 15, 1987, within one year of the date the Board notified him of its affirmance. *See* 45 U.S.C.A. § 231g (West

---

1. Cvikich's annuity is based on ten years' service and the fact that his "permanent physical or mental condition is such that [he is] unable to engage in any regular employment." 45 U.S.C.

A. § 231a(a)(1)(v) (West 1986). At retirement age he may also receive a retirement annuity under § 231a(a)(1)(i).

1986). The petition for review was initially submitted for decision April 6, 1988, pursuant to Third Circuit Rule 12(b). It was held for further consideration until June 29, 1988, when it was assigned for opinion.

### III.

Under the Social Security Act, Milan could receive a child's benefit if Cvikich were insured under that Act. *See* 42 U.S.C.A. § 402(d); *id.* § 416(e) (West 1983); 20 C.F.R. §§ 404.350, 404.353, 404.355(c) (1987). Since 1937, the RRA has contained a "special" or "minimum" provision sometimes described generally as a guaranty that an annuitant's family will not receive less under the RRA than it would if it were instead covered by the SSA. The RRA currently provides:

> If for any month in which an annuity accrues and is payable under this subchapter the annuity to which an individual is entitled under this subchapter (or would have been entitled except for a reduction pursuant to a joint and survivor election), together with the annuity, if any, of the spouse and divorced wife of such individual, is less than the total amount, or the additional amount, which would have been payable to all persons for such month under the Social Security Act [42 U.S.C.A. § 301 et seq.] if such individual's service as an employee after December 31, 1936, were included in the term "employment" as defined in that Act, the annuities of the individual and spouse shall be increased proportionately

to such total amount, or such additional amount: ....

45 U.S.C.A. § 231b(f)(3) (West 1986).[2]

This general language of § 231b(f)(3) is limited by two provisos. Relying on them the Board refused to calculate whether Cvikich's new benefit level under the SSA would be higher than his current RRA annuity of $635.44 per month. It held that under these further provisions of § 231b(f)(3), it could not consider after-born children once an annuity has been certified. The current version of the provisos the Board relies on reads:

> For purposes of [§ 231b(f)(3)], (i) persons not entitled to an annuity under section 231a of this title shall not be included in the computation under this subdivision except a spouse who could qualify for an annuity under section 231a(c) of this title if the individual from whom the spouse's annuity under this subchapter would derive had attained age 60 or 62, as the case may be, and such individual's children who meet the definition as such contained in [42 U.S.C. § 416(e)]; (ii) after an annuity has been certified for payment and this subdivision was inapplicable after allowing for any waiting period under [42 U.S.C. § 423(c)(2)], and after having considered the inclusion of all persons who were then eligible for inclusion in the computation under this subdivision or was then applicable but later became inapplicable, any recertification in such annuity under this subdivision shall not take into ac-

---

**2.** The current statute derives from the RRA of 1974, Pub.L. No. 93–445, Tit. I, 88 Stat. 1305, 1322 (1974), which restated the RRA of 1937, which in turn provided: "In no case shall the value of the annuity be less than the value of the additional old-age benefit he would receive under Title II of Chapter 7 of Title 42 if his service as an employee after December 31, 1936, were included in the term 'employment' as defined therein." 45 U.S.C.A. § 228c(e) (West 1943), enacted as Pub.L. No. 75–162, c. 382, Pt. I, 50 Stat. 307, 311 (1937). The 1974 RRA's legislative history states that "[a]ny exceptions to [the special guaranty] (see clauses (i) and (ii) ... ) are identical to exceptions contained in the comparable provision of the 1937 Act." Senate

Rep. No. 93–1163 (Sept. 23, 1974), reprinted in 1974 U.S. Code Cong. & Admin. News 5702, 5735.

45 U.S.C.A. § 231b(a)(1) (West 1986) also provides that an employee's benefits under § 231a(a)(1) shall equal the amount "of the old-age insurance benefit or disability insurance benefit to which such individual would have been entitled under the [SSA]." That provision does not aid Cvikich, since the additional "employee" or "individual" referred to is the one upon whose account benefits are credited. In other words, it refers to benefits Milan might have received on his account for his credited service if he had been the railroad worker, not to Cvikich's.

count persons not entitled to an annuity under section 231a of this title except a spouse who could qualify for an annuity under section 231a(c) of this title when she attains age 60 or 62, as the case may be, if the individual from whom the spouse's annuity would derive had attained age 60 or 62, as the case may be, and who was married to such individual at the time he applied for his annuity; and (iii) in computing the amount to be paid under this subdivision the only benefits under [42 U.S.C. §§ 401 et seq.] which shall be considered shall be those to which the individuals included in the computation are entitled.

45 U.S.C.A. § 231b(f)(3).[3]

Under proviso (i) Milan is not a person entitled to an annuity under § 231a because he is neither a railroad worker, §§ 231a(a)(1) and 231a(b), a spouse of a worker, § 231a(c)(1), nor a worker's survivor, § 231a(d)(1). It is true that Milan is a worker's "child" as defined in 42 U.S.C.A. § 416(e) and so would qualify in an initial benefit calculation under the first proviso. However, proviso (ii), not proviso (i) applies to recertifications, i.e., recalculations. Garbled as proviso (ii) is, its language speaks of recalculation only for a spouse eligible for derivative annuities under § 231a(c). It makes no mention of a "child" such as Milan.

The Board asserted that the meaning hidden in this inartfully worded statute is "unambiguous" in placing "limitations on testing for the applicability of the so-called special guaranty provision." When initially calculating an annuity, proviso (i) says that the Board should compare family benefits under the SSA and RRA, and should certify the higher amount. 42 U.S.C.A. § 231b (f)(3). For purposes of that initial calculation "family" includes "spouses," "children" (as defined in the SSA), and other persons who already qualify for a regular RRA annuity in their own names. Id. at § 231b(f)(3)(i). The Board thus concedes that Milan might have entitled Cvikich to a higher benefit under the special guaranty "if he had been born prior to [the original] certification of the annuity" in 1975.

However, the Board reads § 231b(f)(3)(ii) as an equally unambiguous command to further limit the definition of "family" in later calculations under the special guaranty clause. After an annuity is certified, the Board asserts, "family" includes only persons who already qualify for a regular RRA annuity in their own names, and the "spouse," if any, to whom the employee was married when the original annuity application was filed.

The Board has not issued regulations implementing its "limitations on testing" for recalculation. The only applicable regulation does not mention any "limitation on testing" and would appear to mandate application of the "special guaranty" regardless of when Milan was born:

**3.** Because its legislative history is relevant, we include the text of the 1972 version as well:

For purposes of the special guaranty proviso of § 228c, ... (vi) individuals not entitled to an annuity under section 2 or 5 of this Act [45 U.S.C. §§ 231a or 231c] shall not be included in the computation under such first proviso except a spouse who could qualify for an annuity under section 2(e) or (h) of this Act if the employee from whom the spouse's annuity under this Act would derive had attained age sixty-five, and such employee's children who meet the definition as such contained in [42 U.S.C. § 416(e)]; (vii) after an annuity has been certified for payment and such first proviso was inapplicable after allowing for any waiting period under [42 U.S.C. § 423(c)(2)] and after having considered the inclusion of all persons who were then eligible for inclusion in the computation under such first proviso, or was then applicable but later became inapplicable, any recertification in such annuity under such first proviso shall not take into account individuals not entitled to an annuity under Section 2 or 5 of this Act [45 U.S.C. §§ 231a or 231c] except a spouse who could qualify for an annuity under [§ 231a(c)] when she attains age sixty-two if the employee from whom the spouse's annuity would derive had attained age sixty-five, and who was married to such employee at the time he applied for the employee annuity; (viii) in computing the amount to be paid under such first proviso, the only benefits under [42 U.S.C. §§ 401 et seq.] which shall be considered shall be those to which the individuals included in the computation are entitled.

Over-all minimum based on Social Security Act formula.

(a) When ... the amount of annuity payable to such individual for an entire month plus the amount, if any, of the spouse's annuity payable for such month to the spouse of such individual, is less than 110 percent of the amount, or 110 percent of the additional amount, which would have been payable for such month under the Social Security Act to the individual, his spouse, *and his children*, if any, the amount of the annuity or annuities shall be increased proportionately to 110 percent of such amount or 110 percent of such additional amount.

20 C.F.R. § 225.6(a) (1987) (emphasis supplied).[4] Moreover, applicants are also administratively informed of the special guaranty without mention of any "limitation on testing." [5]

We have been unable to find any reported decision construing § 231b(f)(3)(ii). The Board relies on the statute itself and on a marginally relevant 1965 opinion holding, under an earlier version of the statute, that Congress could constitutionally enact a special guaranty that raises annuities for workers not independently entitled to Social Security benefits. *Kolonits v. Railroad Retirement Board*, 346 F.2d 367, 368 (7th Cir.1965).[6]

**IV.**

**A.**

We cannot determine whether the Board has consistently applied the language in § 231b(f)(3)(ii) to bar certain recalculations based on the special minimum guaranty when an annuitant's family increases in size, as well as when Social Security benefits are generally increased. The Railroad Retirement Board's Philadelphia office distributes several informational booklets and pamphlets to current annuitants and prospective annuitants.[7] Only the longest of these documents, Form IB–2, contains any mention of the special minimum guaranty; it does not note any "limitation on testing" of the type asserted by the Board in this case. The relevant portion provides in full:

**Minimum Guaranty for Employee and Spouse Annuities**

Under a special minimum guaranty provision, railroad families will not receive less in monthly benefits than they would have if railroad earnings were covered by social security rather than railroad retirement laws. This guaranty is intended to cover situations in which one or more members of a family would oth-

---

**4.** This regulation was published as Board Order 62–33, 27 Fed.Reg. 3322 (April 7, 1962). The special guaranty was increased to 110% by Pub.L. No. 86–28, § 2(c), 73 Stat. 25, 26–27 (1959), and reduced to 100% by Pub.L. No. 93–445, Tit. I, 88 Stat. 1305, 1322 (1974).

**5.** Employee and Spouse Minimum Guaranty Annuity—Special SS Guaranty
This is a 100 percent guaranty that families will not receive less money tha[n] they would receive under SS if RR earnings were covered by that system. This is intended to cover situations where one or more members of a family would be eligible for an SS benefit but are not eligible for a RR annuity, e.g., the children of a retired or disabled annuitant.
The Board identifies this document as "a statement by social security in its own procedure manual which provides a general description of ... 45 U.S.C. § 231b(f)(3)."

**6.** Margiotta v. Railroad Retirement Board, 703 F.2d 931, 932 (5th Cir.1983), holds that the spe-

cial guaranty mandates a comparison of the total benefits the family would receive under either the Railroad Retirement Act or Social Security Act, *not* a combination of the greatest amounts each family member would receive under each Act. The opinion does not state whether the Board's annuity was an initial certification or a recertification based on a new daughter.

**7.** These documents include Form G–74, "Important Information about Survivor Insurance Annuities" (1–87) (5 pp.); Form IB–2, "Railroad Retirement and Survivor Benefits for Railroad Workers and Their Families" (March 1987) (59 pp.); Form RB–1, "Employee Annuity" (7–87) (34 pp.); Form RB–1d, "Employee Disability Benefits" (5–85) (23 pp.); Form RB–4, "Pocket Guide to Railroad Retirement and Survivor Benefits" (2–88) (14 pp.); Form T–5, "Federal Income Tax and Railroad Retirement Benefits" (1–88) (10 pp.); and Form UB–11, "Sickness Benefits for Railroad Employees" (7–76) (16 pp.).

erwise be eligible for a type of social security benefit which is not provided under the Railroad Retirement Act.

For example, social security provides children's benefits when an employee is disabled, retired, or deceased. The Railroad Retirement Act only provides children's benefits if the employee is deceased. Therefore, if a retired rail employee has children who would otherwise be eligible for a benefit under social security, the employee's annuity would be increased to reflect what social security would pay the family, unless the annuity is already more than that amount.

Railroad Retirement Board Form IB–2, "Railroad Retirement and Survivor Benefits for Railroad Workers and Their Families" (March 1987), at 14–15.

The Board's language is unconditional, although a general disclaimer at the end of the pamphlet warns of possible exceptions.[8] The Board has failed to give potential annuitants clear guidance on the statutory limitations of the so-called "special guaranty" provision. That failure may give Mr. Cvikich, and others as well, an impression of arbitrary bureaucratic action.

### B.

"[T]he court, as well as [an administrative] agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), quoted in *Grocery Town Market, Inc. v. United States*, 848 F.2d 392, 394 (3d Cir.1988). The tortured wording of the proviso to § 231b(f)(3), the ambiguous administrative explanations, and the lack of either implementing regulations or authoritative construction of the

current provision leads us to consider legislative history to determine whether there is any "clear intent of Congress" to apply in this case. If so, that intent controls. If not, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782, quoted in *Grocery Town Market*, 848 F.2d at 394.

### C.

The limitations on the special guaranty of § 231b(f)(3) were all added by Pub.L. No. 92–460, § 1(d), 86 Stat. 765, 765–66 (1972). They were presented, on the Board's suggestion, as "technical amendments to the Railroad Retirement Act of 1937 to simplify the computation of benefits in so far as the consideration of Social Security Act provisions is concerned." Senate Report No. 92–1127 (Sept. 14, 1972), reprinted in 1972 U.S.Code Cong. & Admin. News 3469, 3470. The history evidences no concern with applications for increased annuities based on the addition of new family members. The committee which added the amendment said it was concerned with the automatic recalculations which the Board was forced to perform for all annuitants each time the SSA was amended. The Senate Report states:

In cases being paid as regular annuities, problems arise *when social security benefits are increased*. In such cases, the Board is required to ascertain whether the social security increase would result in a transfer of the annuity from the regular formula to the special one. To do this, the Board must determine if the annuitant has qualified dependents (such as minor, disabled or student children) who are not entitled to benefits under the Railroad Retirement Act while the

---

**8.** "This pamphlet is issued for the purpose of general information. Certain limitations, exceptions, and special cases are not covered." Form IB–2 at 59. Board decisions are not published, either by the government or by private reporting services. The CCH Unemployment Insurance Reporter does *not* mention § 231b(f)(3)(ii), stating merely that "total

monthly benefits to an employee and spouse will not be less than 100% of the amount which would have been payable to the employee's family had the employee's nonrailroad and railroad earnings been combined under the Social Security Act." 1 CCH Unempl.Ins.Rep. § 12,513 (1983) at 1303–04.

annuitant is alive but who could be included in the computation of the special annuity. *This requires the Board to send out questionnaires to get information about the annuitant's family composition at the time of each amendment to the Social Security Act.* It is estimated that out of about 300,000 such questionnaires which would have to be sent out to regular annuitants, only a small number (less than 2,000) would have such dependents. *To relieve the Board of the necessity of sending out questionnaires,* the new clause [now (ii)] ... authorizes the Board to include only members of the family on the Board's benefit rolls, or those included in the special annuity *at the time of such social security increase,* for the purpose of determining eligibility for, and the amount of, a special annuity *because of the increase.* This new provision would be used only in cases where the special annuity could have applied but it had previously been determined that the regular annuity produced a higher benefit. 1972 U.S. Code Cong. & Admin. News at 3478 (emphasis supplied).[9]

There is little evidence that Congress intended to eliminate the limitations on recalculation when the annuitant filed the application.[10] The amendment adding § 231b(f)(3)(ii) (originally § 228c(e)(3)(vii)) was sponsored by the Board itself [11] and first passed the House as part of H.R. 15922.[12]

We will not assume that Congress was unthinking or inaccurate in characterizing the amendment as "technical" and discussing only the administrative burden of recalculating RRA annuities with each amendment to the SSA.

In this case the Board has adopted the only construction which could give meaning to the entire, tortured text of proviso (ii) without adding terms to it (*e.g.,* "for purposes of recalculations based on changes in

---

**9.** The Senate Report adopted this language almost verbatim from the Railroad Retirement Board's comments on the proposal. Those comments are appended to the Senate Report. *See* 1972 U.S. Code Cong. & Admin. News at 3488.

**10.** The Senate Report states, immediately following the above-quoted text, that clause (ii) "would not preclude the transfer of a regular annuity to a special one in cases where, for example, the annuitant marries and the sum of his and his wife's annuities is less than required by the special formula." 1972 U.S. Code Cong. & Admin. News at 3478 (quoting verbatim Board's comment, *see id.* at 3488). If this statement applies in cases where the new spouse's annuity is 0, then it appears to conflict with the language in clause (ii) which bars recalculation based on the would-be SSA benefits of a spouse not already entitled to a railroad annuity who was not married to the annuitant at the time of initial certification. However, the Senate Report earlier stated that clause (ii) "would relieve the Board of this burden [of making inquiries as to change in family composition each time the SSA was amended] by requiring it to disregard new additions to the family of a retired employee, except a newly acquired wife *who qualifies for a spouse's annuity." Id.* at 3476 (emphasis supplied). This is better evidence of muddled drafting than of intent to apply the clause only to automatic recalculations.

**11.** *See* H.Rep. No. 1263, 92d Cong., 2d Sess. (1972), at 1.

**12.** This information is found in a government publication written by the Board's Associate General Counsel David B. Schreiber, *The Legislative History of the Railroad Retirement and Railroad Unemployment Insurance Systems* (1978). The author states that "the purpose of the bill H.R. 15922 was to eliminate certain administrative steps in the special formula annuities (those computed under the social security minimum guaranty provision ...)." Rep. Staggers noted the 300,000–questionnaire figure and stated, "This bill would simplify administration of the act by permitting the Board to eliminate technical compliance with all provisions of the Social Security Act, and should lead to streamlining the efficiency of the board's operations." 118 Cong. Rec. 28074 (1972). Rep. Harvey further explained the changes:

First [clause (i)]. In figuring a special annuity to make sure the recipient receives 110 percent of social security, possible rights to social security by members of the family must be traced. Usually these family members would never have rights to railroad retirement. The amendment provides that only family members who could qualify for railroad retirement need to be checked out and counted.

Second [clause (ii)]. *When changes are made in social security,* the Board must check out every family [member] to see if he might qualify for social security in order to figure the annuity. This is eliminated.

*Id.* (emphasis supplied).

the Social Security Act," or "when the Board is required to adjust annuities without individual applications therefore") which Congress did not use.

The language of proviso (ii) and the Board's misleading explanations of it as a general guaranty of a minimum RRA benefit comparable to that provided by SSA may well deserve the attention of Congress and the Board. The text of the proviso, however, ungrammatical and poorly drafted as it is, precludes a recalculation of an annuity for the purpose of taking into account the needs of children born to an RRA annuitant after the award of his annuity has become final. That construction is consistent with the RRA's original basis in the actuarial concepts of a pension plan. Social Security, on the other hand, has cast off its actuarial moorings and become a plan by which transfers are made to retirees and their dependents (whether retired for age or disability) out of a tax imposed on the current work force. The amount of those individual transfers is not limited by the actuarial value of the retiree's own contributions to the Social Security trust fund. It may seem anomalous that retirees covered by RRA, who contribute proportionately more to their fund than Social Security beneficiaries, should receive less protection for their dependent children. Congress, however, has so provided. We will therefore affirm the Board.