**GROCERY TOWN MARKET, INC. and Dorfman, Earl,**

v.

**UNITED STATES of America, Appellant.**

No. 87–1268.

United States Court of Appeals, Third Circuit.

Argued March 8, 1988.

Decided May 20, 1988.

Richard K. Willard, Asst. Atty. Gen., Edward S.G. Dennis, U.S. Atty., Leonard Schaitman, Thomas M. Bondy (argued), Appellate Staff, Dept. of Justice, Civ. Div. Washington, D.C., for appellant.

Stanley Weinberg (argued), Philadelphia, Pa. for appellees.

Before SLOVITER, BECKER and COWEN, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal arises from an order of the district court which reversed the decision of the Secretary of Agriculture ("Secretary") to permanently disqualify Grocery Town Market, Inc. and its owner, Earl Dorfman (collectively "Grocery Town"), from future participation in the Food Stamp Program based on a trafficking violation.[1] The disqualification was based on the Secretary's regulation set forth at 7 C.F.R. § 278.6(f). The district court granted judgment in favor of Grocery Town since it determined that the regulation violated 7 U.S.C. § 2021. Because we hold that Congress intended to disqualify permanently participating stores for any trafficking violation, we will uphold the Secretary's regulation and reverse the district court.

### I.

Grocery Town participated in the Food Stamp Program since the program's inception in 1964. In 1984, the Food and Nutrition Service ("FNS"), the agency charged with administering the program, determined that Grocery Town's rate of coupon redemption was unusually high as compared to other area stores. Because high rates of redemption indicate that a store may be violating program guidelines, FNS decided to look into Grocery Town's operation. A FNS investigator visited the store on October 17, 1984, and spoke to Dorfman. When the investigator mentioned the high rate of redemption, Dorfman attributed it to the large number of patrons who used food stamps.

On February 8, 1985, acting on an anonymous tip that the store was allowing patrons to purchase ineligible items with food stamps and was buying food stamps at a discount from drug addicts, a second FNS official visited the store. Dorfman again denied any program violations and discounted the tip as that of a competitor or a disgruntled customer. Lingering doubts about the store's compliance, however, prompted FNS to send an undercover agent to the store on several occasions during late 1985 and early 1986. On October 22, October 24, and October 29, 1985 and January 16, 1986, an agent was able to purchase ineligible items with coupons. And on February 5, 1986, an agent was again able to purchase several non-food items with food coupons, and was also able to sell $35 in food stamps for $22.50 in cash.

As a result of the investigation, FNS charged the store and its owner with both trafficking and accepting food coupons for ineligible items. After offering Dorfman the opportunity to present his case, the Secretary disqualified Grocery Town on the basis of 7 C.F.R. § 278.6(e)(1)(i), which mandates automatic disqualification for any trafficking offense.[2] Grocery Town

---

1. "Trafficking" is defined as "the buying or selling of [food stamp] coupons or ATP [Authorization To Participate] cards for cash." 7 C.F.R. § 271.2 (1987).

2. The regulation states, in relevant part:
    (e) *Penalties.* FNS shall take action as follows against any firm determined to have violated the Act or regulations. For the purposes of assigning a period of disqualification, a warning letter shall not be considered to be a sanction. A civil money penalty and a disqualification shall be considered sanctions for such purposes. The FNS regional office shall:
    (1) Disqualify a firm permanently if:
    (i) Personnel of the firm have trafficked in coupons or ATP cards....
    7 C.F.R. § 278.6(e)(1987).

appealed the decision through administrative channels, arguing that the disqualification was "drastically harsh and disproportionate punishment under the circumstances," App. at 39, and would put the store out of business and thereby impose a hardship on employees and area patrons. When the appeal was denied, Grocery Town filed an action in the United States District Court for the Eastern District of Pennsylvania, alleging that the regulation violated 7 U.S.C. § 2021(a) because it did not allow the Secretary to consider a monetary penalty in lieu of disqualification.

The district court agreed that the regulation's mandatory disqualification provision violated section 2021(a) because, in its view, that section did not mandate automatic disqualification for a trafficking offense. Rather, the court determined that section 2021(a) allowed the Secretary to impose an alternative monetary penalty in lieu of disqualification where a hardship situation exists. The court concluded that the regulation violated section 2021 because its inflexible mandate impermissibly removed the Secretary's discretion under the statute to impose an alternative statutory penalty. The government appeals to this Court.

## II.

The question before this Court is whether the blanket permanent disqualification required by the Secretary's regulation violates section 2021.[3] The scope of our review of the district court's interpretation of the statute is plenary. *Creque v. Luis,* 803 F.2d 92, 93–94 (3d Cir.1986).

## A.

When presented with a challenge to an administrative agency's construction of a statute that the agency is charged with administering, the Supreme Court has stated that a court must address the following issues:

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984)(footnotes omitted); *see also Kean v. Heckler,* 799 F.2d 895, 899 (3d Cir.1986). In our view, both the language of the statute and the legislative history clearly reflect that Congress intended to exclude first time traffickers from future participation in the Food Stamp Program.

Turning first to the language of the statute, section 2021(a) gives the Secretary the option of, but does not require, imposing a monetary penalty in lieu of a period of disqualification if hardship would result.[4]

---

**3.** Dorfman has since sold Grocery Town, and he argues that this appeal is moot under 7 U.S.C. § 2021(e)(1). Specifically, Dorfman argues that since ownership in Grocery Town has been transferred the only penalty that can be assessed is the section 2021(e)(1) double civil monetary penalty, which is imposed on the prior ownership. This argument is without merit because section 2021(e)(1) would not prohibit the permanent disqualification of Dorfman (in fact the section specifically continues the disqualification period against the prior ownership) and because the government specifically seeks his disqualification.

**4.** Section 2021(a) states, in full:
(a) Disqualification or civil penalty
Any approved retail food store or wholesale food concern may be disqualified for a specified period of time from further participation in the food stamp program, or subjected to a civil money penalty of up to $10,000 for each violation if the Secretary determines that its disqualification would cause hardship to food stamp households, on a finding, made as specified in the regulations, that such store or concern has violated any of the provisions of this chapter or the regulations issued pursuant to this chapter.
7 U.S.C. § 2021(a) (West Supp.1987).

The operative language is "[a]ny approved retail food store ... *may be disqualified ... or subjected to a civil money penalty ...* if the Secretary determines that its disqualification would cause hardship...." 7 U.S.C. § 2021(a) (emphasis added). In most (i.e., non-trafficking) cases, we would agree with Grocery Town that the Secretary has discretion to impose an alternative monetary penalty in lieu of a period of disqualification. However, any such discretion where a trafficking offense is involved is foreclosed by section 2021(b),[5] which mandates that *"[d]isqualification under subsection (a) ... shall be ... permanent* upon the ... first occasion of a disqualification based on trafficking." 7 U.S.C. § 2021(b) (emphasis added). We read section 2021(b)(3) as removing any discretion the Secretary was granted by section 2021(a) to set a penalty in trafficking cases by requiring disqualification, even for a first trafficking offense in a hardship situation. Thus, in our opinion, the language of section 2021(b)(3) supports the Secretary's regulation.

In addition (and contrary to the view of the district court), we find in the legislative history of section 2021 an even stronger indication that Congress intended to permanently disqualify participating stores from further participation in the Food Stamp Program when they engage in any trafficking activity, even where hardship would be visited on those served by the store. Prior to 1982, the Food Stamp Act contained no provision for permanent disqualification.[6] However, concerned in general with the large number of reported violations by participating stores and the "high percentages of violations among stores investigated" by the Department of Agriculture, S.Rep. No. 504, 97th Cong., 2d Sess. 63 *reprinted in* 1982 U.S. Code Cong. & Admin. News 1641, 1701 ("Senate Report"), Congress amended the Act in 1982 to require higher monetary penalties and longer periods of disqualification than those set forth at that time in the regulations for violations of the Act. Most relevant to our inquiry, the 1982 Amendments added the sanction of permanent disqualification for trafficking and multiple non-trafficking offenses.

With respect to the amendments to the penalty provisions, the introduction to the Senate Report states that

> [t]he recommendations would also set by statute the periods of disqualification applicable to retail food stores.... *The retail food store would be permanently disqualified for ... trafficking* in food stamps or authorization documents.

*Id.* at 22, *reprinted in* 1982 U.S. Code Cong. & Admin. News, at 1660 (emphasis added). According to the Senate Report, the penalties for trafficking were increased because the Senate Committee on Agriculture, Nutrition, and Forestry was

> concerned by the increasing frequency in which trafficking cases are reported and verified.... For this reason, the Committee adopted a stringent requirement that a store would be permanently disqualified upon a disqualification based on trafficking.

7 U.S.C. § 2021(b) (West Supp.1987) (emphasis added).

---

5. Section 2021(b) states, in full:

 (b) Period of Disqualification
 Disqualification under subsection (a) of this section shall be—
   (1) for a reasonable period of time, of no less than six months nor more than five years, upon the first occasion of disqualification;
   (2) for a reasonable period of time, of no less than twelve months nor more than ten years, upon the second occasion of disqualification; and
   (3) permanent upon the third occasion of disqualification *or the first occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store or wholesale food concern.*

6. The penalty provision was set forth at 7 U.S.C. § 2020, and stated:

 Any approved retail food store or wholesale food concern may be disqualified from further participation in the food stamp program on a finding, made as specified in the regulations, that such store or concern has violated any of the provisions of this chapter, or of the regulations issued pursuant to this chapter. Such disqualification shall be for such period of time as may be determined in accordance with regulations issued pursuant to this chapter.

*Id.* at 63, *reprinted in* 1982 U.S.Code Cong. & Admin.News, at 1701. The House–Senate Conference Committee's interpretation was no different, as noted below:

> The Senate amendment also sets, by statute, the periods of disqualification applicable to [retail food stores or wholesale food concerns].... *A retail food store or wholesale food concern would be permanently disqualified ... for trafficking* in food stamps or authorization documents.

H.R.Conf.R. No. 759, 97th Cong., 2d Sess. 70, *reprinted in* 1982 U.S.Code Cong. & Admin.News 1846, 1865 (emphasis added).

Grocery Town argues that the language of section 2021(a) requires the Secretary to consider a monetary penalty in lieu of permanent disqualification. However, we find nothing in the legislative history to support this construction of the statute. Indeed, the Senate Report directly contradicts this interpretation of the statute. The report states that it was only

> *[i]n nontrafficking cases,* [that] the Committee would expect the Secretary to continue the current policy of imposing civil penalties instead of disqualification in the case of stores where alternative retail sources are not available to recipients [i.e., hardship].

*Id.* at 63, *reprinted in* 1982 U.S.Code Cong. & Admin.News, at 1701 (emphasis added). Thus, we must reject Grocery Town's reading of the statute as contrary to congressional intent. It is clear to us from the legislative history that in the 1982 Amendments Congress meant to mandate permanent disqualification for traffickers and to allow alternative monetary penalties only in non-trafficking cases where hardship exists.

In sum, we find that Congress' intent to disqualify permanently traffickers from participation in the Food Stamp Program is clearly reflected in both the language and the legislative history of the statute. Because the regulation comports fully with this intent, the regulation must be upheld and the district court's judgment to the contrary must be reversed.

## B.

Even if we could conclude that the statute was ambiguous on the question of available sanctions for trafficking, we would still have to determine that the Secretary's regulation was "arbitrary, capricious, or manifestly contrary to the statute" before we could hold, as the district court did, that the regulation was based on an impermissible construction of section 2021. *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782. Of course, it is well settled that the Secretary's interpretation of a statute he is charged with enforcing is entitled to substantial deference, *EPA v. National Crushed Stone Ass'n*, 449 U.S. 64, 83, 101 S.Ct. 295, 306, 66 L.Ed.2d 268 (1980) (citing *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)); *see also Vineland Chem. Co. v. EPA*, 810 F.2d 402, 409 (3d Cir.1987), and must be upheld even if that interpretation is not the only permissible one or even the most reasonable. *Kean*, 799 F.2d at 899. All that is required to sustain an agency's interpretation is that it is "sufficiently rational [so as] to preclude a court from substituting its judgment for that of [the agency]." *Chemical Mfrs. Ass'n v. Natural Resources Defense Counsel*, 470 U.S. 116, 125, 105 S.Ct. 1102, 1108, 84 L.Ed.2d 90 (1985). Deference to an administrative interpretation is particularly appropriate where, as here, the regulation concerns "the Secretary's choice of sanction" for a statutory violation. *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185, 93 S.Ct. 1455, 1457, 36 L.Ed.2d 142 (1973). The interpretation should only be struck down where "there are compelling indications that [the administrative construction of the statute] is wrong." *E.I. du Pont de Nemours and Co. v. Collins*, 432 U.S. 46, 55, 97 S.Ct. 2229, 2234, 53 L.Ed.2d 100 (1977); *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969); *see also Trade Waste Management Ass'n v. Hughey*, 780 F.2d 221, 232 (3d Cir.1985).

Grocery Town argued, and the court below accepted, that the statute mandated consideration of an alternative penalty to

permanent qualification. However, given the plain wording of section 2021(b)(3), as well as the legislative history of the 1982 amendments altering that section (and the strong suggestion contained therein that trafficking was to be met with permanent disqualification), we cannot say that the Secretary's interpretation of the section 2021, as embodied in the regulation, is unreasonable or clearly wrong. Indeed, other courts have construed automatic permanent disqualification to be consistent with the plain meaning of the statute and/or with congressional intent. *See, e.g., Abdelaziz v. United States*, 837 F.2d 95, 97–98 (2d Cir.1988); *Cullen Drive–In Grocery v. Block*, 778 F.2d 1141, 1142 (5th Cir.1985); *Murry's Steaks, Inc. v. United States*, No. 87–3017, slip op. at 3–4 (4th Cir. Jan. 25, 1988 [838 F.2d 467 (table)]) (per curiam); *Bordelon v. Block*, 636 F.Supp. 713, 716 (W.D.La.), *aff'd*, 810 F.2d 468 (5th Cir.1986); *Negron v. United States*, No. 84–0069–F, Slip op. at 3 (D.Mass. Sept. 11, 1984) (LEXIS, Genfed library, Dist file). Alternatively, then, we would accord deference to the Secretary's construction and on that basis uphold the regulation as a permissible interpretation of section 2021.

### III.

For the reasons set forth above, we will reverse the decision of the district court and remand. The district court will enter judgment in favor of the United States.

BECKER, Circuit Judge, concurring:

I fully agree with the result reached by the majority and I join in the judgment. I cannot, however, join in the majority's opinion for several reasons.

First, I cannot agree that the statute is clear and unambiguous on its face. In my view, not only is the reference in § 2021(b)(3) to disqualification and traffickers not dispositive, but the facial reading adopted by the district court is as plausible as that of the majority. The district court read the statute to provide two types of punitive sanctions: disqualification and civil money penalty. A civil money penalty must be considered "if the Secretary determines that disqualification would cause hardship to food stamp households." § 2021(a). Hardship arises where there are no other comparable retail food stores authorized to accept food stamps in the area. *See* 7 C.F.R. § 278.6(f) (1987). Thus, according to the district court's reading, § 2021(b)(3), the subsection making disqualification mandatory upon "the first occasion of a disqualification based on ... trafficking," only applies to situations in which disqualification is the appropriate sanction. Where hardship exists, subsection (b) does not apply and a civil money penalty must be considered by the Secretary.

The district court determined that the challenged regulation, by mandating disqualification, stripped the Secretary of the discretion to apply civil money penalties to traffickers in hardship areas. As the district court saw it, consideration of hardship was an important congressional policy and the statute mandates that the Secretary at least consider civil money penalties even in trafficking cases. I find the district court's approach sufficiently persuasive to impel me to view the statute as ambiguous. Therefore, in construing it I would turn to the legislative history. *See* 2A C. Sands, *Sutherland on Statutory Construction*, § 48.04, at 300 (4th ed. 1984) (legislative history "has generally been the first extrinsic aid to which courts have turned in attempting to construe an ambiguous act").

Having considered the legislative history, ably set forth by the majority, I agree entirely that Congress intended to authorize disqualification for trafficking regardless of the hardship factor. Thus I am satisfied that the majority is correct, and that the regulation is valid. For me that is the end of the case. Under these circumstances, I would not reach the *Chevron* point. The majority does so, and I am troubled by its discussion.

The majority invokes the "plain meaning" of the statute and the legislative history to conclude that the Secretary's regulation is entitled to deference. But those factors are not the stuff of *Chevron* "deference"; that deference turns instead on

the reasonableness of the agency interpretation. As I understand the law, *Chevron* is explicitly premised on silence or ambiguity. 467 U.S. at 843, 104 S.Ct. at 2781–82. Hence when the statute or the statute plus legislative history is clear (as it is here), *Chevron* does not apply. *See Kean v. Heckler,* 799 F.2d 895, 898–902 (3d Cir. 1986) (examining statute and legislative history before applying *Chevron* deference); *Transbrasil S.A. Linhas Aereas v. Department of Transp.,* 791 F.2d 202, 206–07 (D.C.Cir.1986) (deference need not be accorded where "a statute's language and legislative history indicate a clear congressional intent").

The government maintained at oral argument that permanent disqualification is not theoretically inconsistent with the congressional desire to accommodate hardship because permanent disqualification may produce a prompt sale of the store to new owners who are eligible to participate in the food stamp program. We need not address this contention, however, because the legislative history indicates that Congress did not intend the Secretary to review trafficking cases for hardship; instead, it is apparent that Congress intended mandatory disqualification in all such cases.

Had Congress intended that the Secretary consider hardship in trafficking cases (a premise contrary to fact, as evidenced by the legislative history, but one that is nonetheless assumed in the majority's alternative *Chevron* deference argument), we would be faced with the difficult question whether the rule could be construed to have made a generic determination of non-hardship in trafficking cases. *Cf. Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.,* 462 U.S. 87, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983) (generic rulemaking that storage of nuclear wastes would not have significant environmental impact not arbitrary and capricious where issues are common to all licensing decisions). There is no evidence that the Secretary considered hardship in the rulemaking, nor is there evidence that all trafficking decisions are sufficiently similar to be subject to such a rulemaking, should

consideration of hardship be required. The majority's holding, insofar as it rests on *Chevron* deference, is therefore problematic. I deem it preferable to rest our decision on the statute and legislative history as discussed above. On that basis I concur in the judgment.