**Charlotte FREEDMAN, Owner, Superior Stores Number 3, Appellant,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE.**

**No. 90–5636.**

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) Jan. 10, 1991.

Decided Feb. 11, 1991.

David B. Dowling, Rhoads & Sinon, Harrisburg, Pa., for appellant.

James J. West, U.S. Atty., John A. Morano, Jr., Asst. U.S. Atty., Lewisburg, Pa., for appellee.

Before STAPLETON, GREENBERG, and SEITZ, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

In this case we are asked to determine whether a grocery store participating in the Food Stamp Program can be subject to a civil money penalty for the independent trafficking violations of its clerk when the owner establishes that she had no knowledge of the trafficking and did not participate in or benefit from it, and further establishes to the satisfaction of the Food and Nutrition Service of the United States Department of Agriculture that prior to the violations she had implemented an effective program to prevent violations. We determine that it can.

## I. BACKGROUND

Appellant, Charlotte Freedman, owns Superior Store Number 3 in Harrisburg, Pennsylvania, an approved participant in the Food Stamp Program. Between November 12 and December 15, 1987, the clerk, Mildred Crawford, trafficked in food stamps from the store on four separate occasions, purchasing stamps with a total value of $1,500 for $750 from an undercover investigator for the Food and Nutrition Service ("FNS"), in violation of the Food Stamp Act of 1977, 7 U.S.C. § 2011 *et seq.*[1]

On November 29, 1988, Crawford was indicted for trafficking violations under 7 U.S.C. § 2024(b)(1) and she pleaded guilty to these charges and was placed on probation on May 18, 1989. In a written statement on June 20, 1989, Crawford set forth that she knew the trafficking was against store policy, she was the only employee involved, and Freedman was unaware of the trafficking.[2] Freedman was formally notified of the investigation by a letter from the FNS on June 8, 1989, and was advised that her store was liable for Crawford's trafficking violations under 7 C.F.R. § 278.6(e)(1) (1989).[3] The store was charged with violations of 7 C.F.R.

---

1. Trafficking is defined as "the buying or selling of coupons or ATP cards for cash." 7 C.F.R. § 271.2 (1990). Trafficking should be distinguished from receiving food stamps for ineligible items, which is also a violation under the Act. *See* 7 U.S.C. § 2024(b); 7 C.F.R. § 278.2(a). As a matter of convenience, we are referring to sections of title 7 of the United States Code as sections of the Food Stamp Act.

   Crawford trafficked in stamps on a fifth occasion, on July 28, 1988. However, this incident occurred at her home and not at the store and did not affect the violations charged against Freedman.

2. It appears that Crawford gave this statement to Freedman or her attorneys to assist Freedman in this case.

3. This section provides:

   FNS shall take action as follows against any firm determined to have violated the Act or regulations. For the purposes of assigning a period of disqualification, a warning letter shall not be considered to be a sanction. A civil money penalty and a disqualification shall be considered sanctions for such purposes. The FNS regional office shall:

   (1) Disqualify a firm permanently if:

   (i) *Personnel* of the firm have trafficked in coupons or ATP cards ...

   7 C.F.R. § 278.6(e)(1) (1989 & 1990). [Emphasis added].

§ 278.2(a).[4] Freedman was further informed that her store could be permanently disqualified from the Food Stamp Program or, pursuant to a new regulation published in the Federal Register on May 2, 1989, could be subject to a civil money penalty of up to $20,000 in lieu of permanent disqualification. *See* 54 Fed.Reg. 18,642–43 (1989) (interim rule setting forth criteria for civil penalty in lieu of permanent disqualification). Previously, permanent disqualification was mandated for any trafficking violation. *See* 7 U.S.C.A. § 2021(b) (1986). Under the new regulation, to be eligible for the civil money penalty in lieu of permanent disqualification, Freedman was required to submit substantial evidence that she had an effective policy in place to prevent violations. *See* 54 Fed.Reg. 18,642–43.

On June 22, 1989, Freedman requested the FNS to dismiss the charges against her, arguing that she should not be subject to a penalty for Crawford's independent criminal violations as she had no knowledge of them and derived no benefit from them. In the alternative, Freedman requested that the FNS impose a nominal civil money penalty of $50 for each violation. In support of her position, Freedman submitted affidavits from herself and two long-time employees attesting to her training of employees regarding the correct procedure for handling food stamps. By letter dated September 13, 1989, the FNS informed Freedman that it had determined that she did have an effective policy to prevent violations and it was assessing a civil money penalty of $20,000 in lieu of permanent disqualification.

Freedman requested and was given an administrative review of the $20,000 penalty. However, on December 29, 1989, the Administrative Review Officer assigned to the case informed her that he had determined that the imposition of the $20,000 civil money penalty was "fair and proper" and would not be changed.

■ Freedman then filed a complaint against the United States Department of Agriculture seeking judicial review of the determination of the Administrative Review Officer in the United States District Court for the Middle District of Pennsylvania. The Department moved for summary judgment and, on June 22, 1990, the district court granted its motion.[5] The district court found that Freedman's case "fell within the guidelines for sanctioning and satisfied the criteria for avoiding a permanent disqualification" and for the imposition of the civil money penalty. The district court also upheld the amount of the civil money penalty as within the allowable range established by the Food Stamp Act and found that it was not arbitrary and capricious. Freedman appealed from the order of June 22, 1990, to this court. The district court had jurisdiction pursuant to 7 U.S.C. § 2023(a) and we have jurisdiction under 28 U.S.C. § 1291.

## II. ANALYSIS

Penalties for violations of the food stamp program by retail food stores are governed by section 12 of the Food Stamp Act. The act provides:

> Any approved retail food store or wholesale food concern may be disqualified for a specified period of time from further participation in the food stamp program, or subjected to a civil money penalty of up to $10,000 for *each violation* if the Secretary determines disqualification would cause hardship to food stamp households, *on a finding*, made as specified in the regulations, *that such store or concern has violated any of the provisions of this chapter or the regulations issued pursuant to this chapter.*

7 U.S.C. § 2021(a). [Emphasis added].

Trafficking violations have been subject to especially strong penalties. Until 1988,

---

4. This section provides that "[c]oupons may not be accepted in exchange for cash, except when cash is returned as change in a transaction in which coupons were accepted in payment for eligible food...."
7 C.F.R. § 278.2(a).

5. Our review of the district court's grant of summary judgment is plenary. *Federal Kemper Ins. Co. v. Rauscher,* 807 F.2d 345, 349 (3d Cir.1986).

7 U.S.C. § 2021(b) provided for *mandatory permanent* disqualification from participation in the food stamp program for the *first* trafficking violation. The section set forth:

> Disqualification under subsection (a) of this section shall be—
>
> . . . . .
>
> . . . . .
>
> (3) permanent upon the third occasion of disqualification or the *first occasion of a disqualification based on the purchase of coupons or trafficking in coupons* or authorization cards *by a retail food store or wholesale food concern.*

*See* 7 U.S.C.A. § 2021(b) (1986). [Emphasis added].

The Code of Federal Regulations, which implements section 2021(b) of the Food Stamp Act, provides, in relevant part, that:

> ... A civil money penalty and a disqualification shall be considered sanctions for such purposes. The FNS regional office shall:
>
> (1) Disqualify a firm permanently if:(i) *Personnel of the firm* have trafficked in coupons or ATP cards....

7 C.F.R. § 278.6(e)(1) (1987 through 1990). [Emphasis added].

Thus, we held in *Grocery Town Market, Inc. v. United States,* 848 F.2d 392 (3d Cir.1988), that under 7 U.S.C. § 2021(b), prior to its 1988 amendment, the Secretary of Agriculture was without discretion to impose a monetary penalty for a trafficking violation in lieu of permanent disqualification, as the statute mandated permanent disqualification and that the regulation comported fully with Congress's intent to disqualify traffickers permanently. 848 F.2d at 396.

Congress amended section 2021(b) in 1988 to give the Secretary discretion to impose a civil money penalty in lieu of permanent disqualification for a trafficking violation. As amended, the statute provides that disqualification shall be:

> (3) permanent upon—

(A) the third occasion of disqualification; or

(B) the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or *trafficking* in coupons or authorization cards *by a retail food store* or wholesale food concern, *except that the Secretary shall have the discretion to impose a civil money penalty of up to $20,000 in lieu of disqualification under this subparagraph, for such purchase of coupons or trafficking* in coupons or cards that constitutes a violation of the provisions of this chapter or the regulations issued pursuant to this chapter, if the Secretary determines that there is substantial evidence that such store or food concern had an effective policy and program in effect to prevent violations of this chapter and the regulations.

7 U.S.C. § 2021(b) (1988). [Emphasis added].

This amendment became effective on October 1, 1988.[6]

Following the amendment to the statute, the Secretary did not amend 7 C.F.R. § 278.6(e)(1) which provided the penalty of permanent disqualification of a firm for trafficking by its *personnel.* Rather, in 1989 the Secretary amended 7 C.F.R. § 278.6(i) to add the eligibility requirements for a store to receive a civil money penalty in lieu of permanent disqualification. This section now provides:

> FNS may impose a civil money penalty in lieu of a permanent disqualification for trafficking in food coupons, ATP cards or other Program benefit instruments *if the firm timely submits to FNS substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and program to prevent violations of the Program.* Firms assessed a CMP under this paragraph shall be subject to the applicable penalties included in §§ 278.6(e)(2) through (6) for the sale of

---

6. The effective date was originally July 1, 1989, but Congress subsequently accelerated the date to October 1, 1988. *See* Pub.L. No. 100–435, §§ 344, 701(b)(4), 102 Stat. 1664, 1678 (1988); Pub.L. No. 100–619, 102 Stat. 3198 (1988).

ineligible items. *Only those firms for which a permanent disqualification for trafficking took effect on or after October 1, 1988, are eligible for a civil money penalty in lieu of permanent disqualification for trafficking,....*

7 C.F.R. § 278.6(i) (1990).[7] [Emphasis added].

This section also provides criteria by which the FNS determines if the store involved warrants the imposition of a civil penalty in lieu of permanent disqualification setting forth:

> In determining the minimum standards of eligibility of a firm for a civil money penalty in lieu of a permanent disqualification for trafficking, the *firm shall, at a minimum, establish by substantial evidence its fulfillment of each of the following criteria:*
>
> *Criterion 1:* The firm shall have developed an effective compliance policy as specified in § 278.6(i)(1); and
>
> *Criterion 2:* The firm shall establish that both its compliance policy and program were in operation at the location where the violation(s) occurred *prior* to the occurrence of violations cited in the charge letter sent to the firm; and [emphasis in original]
>
> *Criterion 3:* The firm had developed and instituted an effective personnel training program as specified in § 278.6(i)(2); and
>
> *Criterion 4: Neither firm ownership nor management were aware of, approved, benefitted from, or were in any way involved in the conduct or approval of trafficking violations.*

7 C.F.R. § 278.6(i) (1990). [Emphasis added except as stated].

The FNS relied on amended 7 U.S.C. § 2021(b) and amended 7 C.F.R. § 278.6(i) to determine that Freedman was eligible for the imposition of a civil penalty in lieu of permanent disqualification from the Food Stamp Program.[8] The district court also determined that Freedman's case was subject to these provisions of the revised Food Stamp Act.

■ Preliminarily, Freedman argues that her case should not have been determined under the 1988 amendment to the Food Stamp Act since the trafficking violations which support the imposition of the penalty occurred *prior* to the effective date of the amendment, October 1, 1988. She urges that the FNS should have considered her case under the pre-amendment version of section 2021(b), which provided no discretion for the imposition of a civil money penalty and mandated permanent disqualification for a first trafficking violation. Furthermore, she contends that under the pre-amendment version of section 2021(b), the government had to show that the trafficking acts were taken for the benefit of the store owner in order to impose permanent disqualification. Therefore, in her view, the only penalty that could be imposed against her was permanent disqualification, but that penalty was not available because the government acknowledged that she had an effective policy to prevent violations and could not prove that Crawford's trafficking acts were for Freedman's benefit, as Crawford admitted she took the money for herself and Freedman knew nothing about her actions.

We reject this argument. Freedman cites no authority for the proposition that her case should be governed by the pre–1988 amendment to section 2021(b). In fact, Freedman does not consider 7 C.F.R. § 278.6(i), which provides that the civil money penalty will be available in cases involving permanent disqualifications effective on or after October 1, 1988.[9] Both the

---

7. Eligibility for a civil money penalty in lieu of disqualification was formerly found only in 7 C.F.R. § 278.6(f) and dealt only with the eligibility for the civil money penalty pursuant to 7 U.S.C. § 2021(a) which provided for a civil money penalty if disqualification would cause hardship to food stamp households. *See* 7 U.S.C. § 2021(a) (1988) and 7 C.F.R. § 278.6(f) (1988). Neither section has been changed. *See*

7 U.S.C. § 2021(a) (1988) and 7 C.F.R. § 278.6(f) (1990).

8. The letter of September 13, 1989, from the FNS to Freedman referred to 7 C.F.R. § 278.6(a), but that section in turn refers to 7 C.F.R. § 278.6(i).

9. Since Freedman does not address 7 C.F.R. § 278.6(i), she does not challenge its validity.

language of the regulation and its history undermine Freedman's argument.

The 1988 amendment to 7 U.S.C. § 2021(b) does not specify whether the civil money penalty is available only for violations occurring after its effective date. However, 7 C.F.R. § 278.6(i) (1990) provides that "[o]nly those firms for which a permanent disqualification for trafficking took effect on or after October 1, 1988, are eligible for a civil money penalty in lieu of permanent disqualification for trafficking...." Freedman was notified of the trafficking violations on June 8, 1989, and the penalty was assessed by letter of September 13, 1989. Therefore, under the regulation, a permanent disqualification of her store could not take effect until *after* October 1, 1988.

The legislative history of the amendment to section 2021(b) reveals that Congress was concerned with the lack of discretion available in the imposition of penalties for trafficking offenses committed by employees acting independently, for personal profit, and without any benefit accruing to their employers. 54 Fed.Reg. 18,642–43. The amendment to section 2021(b) was meant to provide discretion for imposition of a less severe punishment than disqualification for trafficking offenses, provided the employer had implemented an effective program to prevent such independent violations. 54 Fed.Reg. 18,642–43. The Department of Agriculture interpreted the rule's date of effectiveness—October 1, 1988—as showing a congressional intent to "expedite the availability of this relief." *Id.* at 18,645. Therefore, the Department provided that the civil money penalty option "is available to any firm for which permanent disqualification for trafficking had not yet taken effect as of October 1, 1988,...." *Id. See also* 7 C.F.R. § 278.6(i). Given the concern of Congress with the severity of

permanent disqualification and the consequent amendment of 7 U.S.C. § 2021(b) to provide for a lesser penalty, the implementation by the Secretary of 7 C.F.R. § 278.6(i) regarding the date of the availability of the civil money penalty under the statute is a reasonable construction of the statute.[10] *See generally Chevron, U.S.A., Inc. v. National Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

■ Freedman further argues that she cannot be held liable for Crawford's independent trafficking violations, since the FNS determined that she had implemented an effective program to prevent violations and had no knowledge of and derived no benefit from Crawford's independent criminal actions. We reject this argument and hold that Freedman is subject to the $20,000 civil money penalty.

The amendment to section 2021(b) of the Food Stamp Act, particularly when considered with its legislative history, indicates that Congress intended that an innocent store owner be subject to penalty under amended section 2021(b). This amendment provides the Secretary with the discretion to impose a fine of up to $20,000 in lieu of permanent disqualification for a trafficking offense "if the Secretary determines that there is substantial evidence that such store or food concern had an effective policy and program in effect to prevent violations of this chapter and the regulations." 7 U.S.C. § 2021(b).

The legislative report pertinent to amended section 2021(b) addresses the reasons for the addition of the civil money penalty option. In discussing the former version of section 2021(b), which required permanent disqualification of the store from the program for violations, the report states:

---

But even if she did, her argument would be rejected, as we discuss below.

**10.** Because we find no merit to Freedman's argument that her case should be determined under the pre-amendment version of 7 U.S.C. § 2021(b), we do not address her contention that under the pre-amendment version of section 2021(b), where the only punishment option

was permanent disqualification, the government had the burden to establish that the store owner knew of or benefitted from the trafficking violations. Freedman also argues that the government has the burden of proving knowledge of or benefit to the store under amended 7 U.S.C. § 2021(b). We address this argument below.

[t]his is a strict policy. Sale of food stamps at a discount price or trading food stamps for non-food items is a serious offense. It violates the purpose of the food stamp program and harms needy food stamp families. Nevertheless, there are instances in which trafficking in food stamps will take place—despite the best efforts of all people committed to a well-run food stamp program.

The permanent disqualification of retail food stores upon the first trafficking offense—without any evaluation of preventive measures taken or complicity in the trafficking—seems excessively harsh. The Committee substitute gives the Secretary of Agriculture the discretion to impose a fine of up to $20,000 on a retail or wholesale food store instead of disqualification. The Secretary *may* exercise that discretion—*if it is determined that there is substantial evidence that the store had an effective policy and program to prevent these violations of the Food Stamp Act.*

Examples of an effective policy and program to prevent violations of the Act or regulations by a store or concern might include the following: (i) effective written policies and procedures to be followed by store personnel that are consistently applied by management; (ii) initial training of store managers and employees in the proper handling of food stamps; (iii) periodic oversight and continuing education of store personnel in the proper handling of food stamps; and (iv) other reasonable and good faith efforts that demonstrate the existence of an effective policy and program by the store or concern to prevent violations of the act or regulations.

*A retail food store or wholesale food concern which has an effective policy and program to prevent trafficking should not be presumptively disqualified from participation in the Food Stamp Program due to the unauthorized or expressly prohibited acts of store personnel ....*

The Committee expects the Department of Agriculture to continue to vigorously pursue and punish those perpetrators involved in food stamp fraud, including store personnel and owners that are culpable or negligent with respect to trafficking offenses. Accordingly, the Committee has authorized the imposition of civil monetary penalties of up to $20,000 for trafficking violations by a retail food store or wholesale food concern. *However, innocent persons should not be subject to the harsh penalty of disqualification where a store or concern has undertaken and implemented an effective program and policy to prevent violations.* The Secretary of Agriculture is directed to promulgate regulations consistent with the described amendment.

. . . .

This provision provides [the Secretary with discretion]. The Act will retain strict penalties—*fines can be imposed as well as disqualification from participation in the food stamp program.* With Secretarial discretion, we can be assured that the punishment will more closely fit the crime.

H.Rep. No. 828, 100th Cong., 2d Sess. 27–28 (1988). [Emphasis added].

The report clearly indicates that the amendment was intended to limit the imposition of permanent disqualification upon an innocent store owner for a trafficking violation by an employee. It specifically states that "a [store] which has an effective policy ... to prevent trafficking should not be presumptively disqualified from participation in the Food Stamp Program due to the unauthorized or expressly prohibited acts of store personnel ..." and that "innocent persons should not be subject to the harsh penalty of disqualification" if a store owner has implemented an effective plan to prevent violations. Thus, the report does not support a conclusion that an innocent store owner should not be subject to the civil money penalty.

In fact, exactly the opposite result is indicated. The harshness of subjecting an innocent store owner to permanent disqualification prompted Congress to give the Secretary discretion to impose a civil mon-

ey penalty in lieu of permanent disqualification. The fact that the civil money penalty was to be imposed only if it is determined that a store owner had an effective policy to prevent violations clearly indicates that Congress intended "innocent" store owners be subject to the penalties authorized by section 2021(b) of the Food Stamp Act as amended in 1988.

While the amendment to section 2021(b) was intended to provide a lesser penalty to an innocent store owner, Congress did not intend that such an owner avoid any penalty at all. Without some level of responsibility for the acts of an employee, even on the part of a totally innocent store owner, the amendment would have no force at all.

The cases Freedman cites to support her contention that as an innocent owner she cannot be penalized are distinguishable. These cases involved disqualification for trafficking violations under the former version of 7 U.S.C. § 2021(b), where the only available penalty was disqualification. As such, they do not reflect the intent of Congress in amending 7 U.S.C. § 2021(b) to allow the imposition of a civil money penalty on an innocent store owner instead of permanent disqualification.

Thus, in *Badwan v. United States*, 541 F.2d 1388 (10th Cir.1976), as a result of an employee trafficking in food stamps in violation of the Food Stamp Act for his own advantage, the store was disqualified for one year from participation in the food stamp program, even though the employee actively concealed his actions from his employer.[11] *Id.* at 1391. Based on these facts, the court determined that the employer was not responsible for the "criminal frolic" of his employee. *Id.* The court noted that a person traffics in food stamps for his own benefit. Furthermore, in that case the trafficking "was not the

result of improper training, inadequate explanation, or negligent supervision of employees but the result of a single employee's criminal intent." *Id.* at 1391. Therefore, the court refused to hold the employer liable under the act for the independent criminal actions of an employee. *Id.*

In *R Ranch Market Corp. v. United States*, 861 F.2d 236 (9th Cir.1988), on which Freedman also relies, trafficking by store employees in food stamps led to the permanent disqualification of the store from participating in the food stamp program. The court of appeals held that a store could not be permanently disqualified without a showing by FNS that the store had knowledge of or participated in the predicate violations.

*R Ranch* was decided under the 1982 version of 7 U.S.C. § 2021, under which trafficking violations were punishable only by permanent disqualification. The court acknowledged that because a retail food store can only act through its employees, some level of *respondeat superior* liability must attach if the statute is to have any meaning at all. 861 F.2d at 239. The court noted that, prior to 1982, the regulations defined "firm" to include *"any person acting on behalf of the ownership or management." Id.* (citing 7 C.F.R. 278.-6(a) (1982)). [Emphasis added]. However, the regulations issued to implement the 1982 amendments deleted this provision, providing instead for permanent disqualification when any "[p]ersonnel of the firm have trafficked in coupons." 861 F.2d at 239. (citing 7 C.F.R. 278.6(e)(1)(i) (1987)).

The court stated that, because the extent of a store's *respondeat superior* liability was not specifically addressed in the statute, the issue for decision was whether this new regulation was "based on a permissi-

---

**11.** *Badwan* was decided under section 2020 of the Food Stamp Act of 1964, under which a trafficking violation resulted in disqualification but not in automatic permanent disqualification, as under the 1982 amendments, or in permanent disqualification or a civil money penalty as under the 1988 amendments. This fact further distinguishes *Badwan* from the present case because in 1982 the penalties for trafficking offenses were substantially increased, partic-

ularly in that permanent disqualification became the required penalty for a trafficking offense. *See Grocery Town Market, Inc. v. United States*, 848 F.2d at 395. This amendment reflected congressional belief that trafficking is a serious offense. *See* S.Rep. No. 504, 97th Cong., 2d Sess. 64, *reprinted in* 1982 U.S.Code Cong. & Admin.News 1641, 1702; 7 U.S.C. § 2021(b) (1982).

ble construction of the statute." 861 F.2d at 239. The court found that the regulation, providing for permanent disqualification for trafficking by any personnel, was not so based. It was reluctant to infer that Congress intended to impose such a sanction on an unknowing employer absent a clear indication that such was Congress's intent and that no such intent was evident. The court noted that the 1982 amendments increased only the penalty for violations. The court reasoned that Congress was presumably aware of the existing regulation, requiring that the employee act "on behalf of the ownership or management," and existing case law requiring an employee to act for the benefit of the store, and did nothing to change this construction. *Id.* The court found that to the extent the regulation permits liability for independent criminal violations to be imposed on an innocent store owner, it must be deemed to be arbitrary and capricious. *Id.*

Neither *Badwan* nor *R Ranch* is controlling here. Neither involved the recent amendment to section 2021(b) which, as discussed above, was intended to allow the imposition of a civil money penalty on a store owner who neither knew of nor benefitted from the trafficking violations, though at the same time relieving the owner from the harsh mandatory disqualification penalty.[12] Here we are not faced with a situation as in *R Ranch,* where the court was unwilling to infer an intent on the part of Congress to impose the harsh penalty of permanent disqualification without a clear indication of that intent. Rather, the amendment to section 2021(b) provides clear evidence that Congress did intend to allow for the imposition of a civil money penalty on an innocent store owner.

Further support for our conclusion that an innocent store owner can be held liable for an employee's violations is found in section 2021(a), which sets forth the general statement on the penalty of disqualification. That section provides:

Any approved retail food store or wholesale food concern may be disqualified for a specified period of time from further participation in the food stamp program, or subjected to a civil money penalty of up to $10,000 for each violation if the Secretary determines that its disqualification would cause hardship to food stamp households, on a finding, made as specified in the regulations, that *such store or concern has violated any of the provisions* of this chapter or the regulations issued pursuant to this chapter.

7 U.S.C. § 2021(a). [Emphasis added].

Section 2021(a) has been interpreted to mean that an owner's personal non-involvement in a violation does not prevent disqualification. *Kulkin v. Bergland,* 626 F.2d 181, 183 (1st Cir.1980). *See also Wolf v. United States,* 662 F.2d 676, 678 (10th Cir.1981) (citing *Kulkin*).

In *Kulkin,* a store was disqualified for one year for accepting stamps for ineligible items. The owner appealed alleging, *inter alia,* that he was not personally involved in the violations. The court of appeals found this circumstance not controlling and held that the owner's personal non-involvement did not prevent disqualification, basing its decision on section 2021(a) which it found, "requires only 'a finding ... that *such store* ... has violated any of the provisions of [the Food Stamp Act] or the regulations issued pursuant [to the act].'" *Id.* [Emphasis added]. The court found that "[a]n improper sale by a cashier [was] sufficient to establish a violation [by the Store]." *Id.*

*Kulkin* relied solely on 7 U.S.C. § 2021(a), which has not been amended. Therefore, accepting the reasoning of *Kulkin,* which we do, for a penalty to be imposed only a violation by the *store* need be shown. In fact, the *Kulkin* analysis of section 2021(a) undermines the holding in *R Ranch* that Congress did not intend an innocent store owner to suffer permanent disqualification without having involvement in the violations, since section 2021(a) provides that a store may be disqualified for a

---

**12.** Freedman does not contend that the amendment cannot be constitutionally applied to violations before its effective date. *See Rivera v. United States,* 630 F.Supp. 35, 38 (E.D.Pa.1985).

specified period of time upon a finding of a violation *by the store.*[13]

There is no doubt that in this case *the store*, through Crawford's actions, violated the Food Stamp Act. Under the *Kulkin* approach, this violation is all that need be shown for a penalty to be imposed. The amendment to section 2021(b) therefore simply provides that in certain circumstances an owner may demonstrate that a less severe penalty than would otherwise be required may be imposed. But nothing in the amendment supports Freedman's argument that, as an innocent owner, she should be subject neither to disqualification nor to the civil money penalty.

Freedman also argues that the district court's grant of summary judgment denied her right to a de novo judicial review under the Food Stamp Act as well as her right to cross-examine witnesses. We reject this argument.

Section 14 of the Food Stamp Act provides that judicial review of administrative action "shall be by a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023. This section requires the district court to examine the entire range of issues raised and not merely to determine whether the administrative findings of the agency are supported by substantial evidence. *Modica v. United States*, 518 F.2d 374, 376 (5th Cir.

1975). The court must reach its own factual and legal conclusions and is not limited to matters considered in the administrative proceedings. *Id. See also Bush v. United States*, 473 F.Supp. 715, 717 (E.D.Pa.1979).

However, de novo review is compatible with a summary judgment disposition if there are no material facts in dispute. *See In Suk Pak v. United States Department of Agriculture*, 690 F.Supp. 322 (M.D.Pa. 1987), *aff'd*, 853 F.2d 918 (3d Cir.1988). *See also Modica*, 518 F.2d at 376 ("[d]espite the trial de novo provision, it is clear that summary judgment is a proper means of disposing of requests ... where there are presented no genuine issues of material fact"). *See generally Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Undisputed facts can be ascertained on a motion for a summary judgment. In reality, an ordinary private civil action is a de novo proceeding in the sense that the court makes an original determination of the law and the facts but such a case may, when appropriate, be resolved on summary judgment. Furthermore, if summary judgment is warranted, the right to cross-examination is not undermined, for their is no need for it as the facts are not in dispute. Here there was no dispute of material fact, as it is not denied that Freedman's employee committed the violations in her store and that

---

**13.** Our result is based on the amendment to 7 U.S.C. § 2021(b), providing the Secretary with the discretion to impose the civil money penalty. We are not confronted with the question of whether the Secretary would have to prove knowledge of or benefit to the owner regarding the violations if he refused to exercise his discretion and decided to disqualify permanently the store from participation in the food stamp program for the independent trafficking violations of a clerk. However, we note that the *Kulkin* interpretation of section 2021(a), along with the fact that amended section 2021(b) gives the Secretary the discretion to impose a civil money penalty, both support a conclusion that permanent disqualification is permissible for even an independent trafficking offense without any proof of knowledge and/or benefit to the store owner. We find further support for this in the legislative history of amended section 2021(b) discussing the harshness of imposing permanent disqualification on an innocent store owner. The fact that Congress recognized the

harshness of this penalty presupposes that it authorized its imposition. To the extent that *Badwan* and *R Ranch* hold otherwise, we reject them.

We note further support for the viability of permanent disqualification as a penalty against even an innocent store owner in section 2021(a), which as discussed above, has been held to require only a showing that a violation *by the store* has occurred. *See Kulkin*, 626 F.2d at 183. The language of both former section 2021(b) and amended section 2021(b) follows this concept. That is, former 2021(b) provided for permanent disqualification for a trafficking violation *by a retail food store*. Amended section 2021(b) provides for permanent disqualification or a civil money penalty for a trafficking violation *by a retail food store*. The use of "by a retail food store" is consistent with the holding in *Kulkin* that only a violation by the store, *i.e.* even one through a store clerk for his own benefit, can support the imposition of a penalty.

showing without more was the basis for the penalty.

We recognize that Freedman contends there were issues of material fact as to whether the government created violations at her store, "thereby exacerbating the penalty she now faces." Brief at 12. In this regard, she asserts that she should have been warned once the Department of Agriculture knew that Crawford had engaged in one trafficking transaction. Freedman claims that only by cross-examination of the government's witnesses will she be able to discover the intent of the government with respect to its actions in the investigation.

We do not, however, regard Freedman's contention as raising a dispute of material fact. First, as we have indicated, the violations undeniably occurred in Freedman's store. Second, under the Food Stamp Act even one trafficking violation can sustain disqualification from the program or the imposition of the maximum civil money penalty. *See* 7 U.S.C. § 2021(b) (1988). Third, section 2021(b) *presumes* that the penalty for even the first trafficking violation will be permanent disqualification. It is only if and when the store submits substantial evidence to prove that it has an effective policy to prevent violations that the civil penalty can be considered. In any event, the Department had no obligation to discontinue the use of the undercover agent simply because it had evidence of one violation, even though the proliferation of violations may have resulted in an increased penalty.[14]

## CONCLUSION

The district court correctly applied amended 7 U.S.C. § 2021(b) and 7 C.F.R. § 278.6(i) to uphold the imposition of a civil money penalty and to grant summary judgment. Consequently, we will affirm the summary judgment of June 22, 1990.

---

**14.** Freedman does not suggest that the Department's conduct somehow could be regarded as an entrapment. *See Yousef v. United States,* 647

F.Supp. 127, 131 (M.D.Fla.1986); *Tyer v. United States,* 645 F.Supp. 1528, 1532 (N.D.Miss.1986).