David DE JUNG YUN, t/d/b/a De J. Yun's Market, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. Civ.A. 98–4828.

United States District Court, E.D. Pennsylvania.

Aug. 20, 1999.

Jack M. Bernard, Philadelphia, PA, for David De Jung Yun, Trading and Doing Business as "De J. Yun's Market", plaintiff.

James G. Sheehan, U.S. Attorney's Office, Philadelphia, PA, Annetta Foster Givhan, United States Attorney's Office, Philadelphia, PA, for United States of America, defendant.

---

**MEMORANDUM**

EDUARDO C. ROBRENO, District Judge.

Presently before the court is defendant United States of America's (the "Government") motion for summary judgment and plaintiff De J. Yun's Market's (the "Market" or plaintiff) response thereto. Plaintiff filed this civil action, pursuant to 7 U.S.C. § 2023,[1] seeking review of the United States Department of Agriculture's ("USDA"), Food and Consumer Service's (the "FCS") decision to permanently disqualify the Market from participation in the food stamp program (the "program") for trafficking[2] food stamps. Plaintiff argues that the disqualification decision should be set aside, and instead a monetary penalty should be imposed. The Government contends that the decision to permanently disqualify the Market was proper because the Market cannot satisfy the criteria necessary for the imposition of monetary sanction in lieu of disqualification. Because plaintiff has failed to produced sufficient evidence to raise a genuine issue of material fact that the Market had developed and implemented an effective compliance policy to prevent violations of the program, and that an effective compliance training program had been implemented, the court will grant the motion for summary judgment.

## I. FACTS

The following facts are not in dispute and are construed in the light most favorable to the plaintiff. The Market was an authorized participant in the food stamp program of the FCS. In October of 1997,

---

1. Section 2023 reads, in pertinent part:
   If the store, concern, or State agency feels aggrieved by such final determination [of the administrative agency], it may obtain judicial review thereof by filing a complaint against the United States in the United States district court for the district in which it resides or is engaged in business ... within thirty days after the date of delivery or service of the final notice of determination upon it, requesting the court to set aside such determination.
   7 U.S.C. § 2023(a)(13) (West Supp.1999).

2. Buying or selling of food stamps for cash or consideration other than eligible food is a punishable offense known as "trafficking." 7 C.F.R. § 271.2.

the FCS conducted an investigation at the Market to determine whether it was in compliance with the program. During the investigation, the FCS investigator visited the Market on three occasions and observed four violations[3] committed by employees of the Market.[4]

On January 20, 1998, the FCS Regional Office sent plaintiff a letter (the "charge letter"), informing it that the FCS was charging the Market with the trafficking of food stamps and that the FCS was considering either to permanently disqualify the Market from the program or impose a civil monetary penalty. In the charge letter, the FCS also specifically informed plaintiff that in order to be eligible for a monetary penalty in lieu of permanent disqualification, plaintiff must, within ten (10) days, submit a request for the monetary penalty as well as provide, pursuant to section 278.6(i) of the regulations, "substantial evidence that your firm had an effective policy and program in effect to prevent violations." Administrative Record ("A.R.") at 62.[5]

Plaintiff in response, thru counsel, requested an imposition of a civil monetary penalty instead of disqualification. A.R. at

51. However, plaintiff's request did not include any supporting documentation. On March 9, 1998, the FCS informed plaintiff that the Market was permanently disqualified from the program, effective upon receipt of the notice. A.R. at 37.[6] Plaintiff requested and received a formal administrative review of the decision. *See* A.R. at 23–24. After meeting with plaintiff and counsel, and reviewing the record, the Administrative Review Officer determined that permanent disqualification was the appropriate sanction and sustained the initial decision. A.R. at 24.[7] On September 10, 1998, plaintiff filed this suit, admitting that the violations occurred, but requesting that the court set aside the FCS disqualification, and instead impose a civil monetary penalty.

## II. LEGAL STANDARD

■ Section 14 of the Food Stamp Act provides that judicial review of administrative action "shall be by a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue. . . ." 7 U.S.C. § 2023(a)(15) (West.Supp.1999). Further-

---

**3.** The violations were as follows: On October 4, 1997, the investigator purchased both eligible and ineligible items for food stamps. On October 6, 1997, the investigator again purchased both eligible and ineligible items for food stamps, and also exchanged with the clerk $95.00 in food stamps for $66.00 in cash. On October 8, 1999, the investigator purchased both eligible and ineligible items for food stamps, and also exchanged with the clerk $150.00 in food stamps for $105.00 in cash.

**4.** The owner of the Market disputes that he personally was involved with any of the violations. Instead, the owner contends that the trafficking violations were committed by the owner's mother and a former employee. *See* Compl. at ¶ 13. In support, the owner has offered evidence, in the form of affidavits from customers of the Market, attesting that the owner currently does not operate, nor has ever worked the cash register. In contrast, the Government contends that the investigator's description of the person operating the cash register at the time the violations oc-

curred, confirms that the owner was personally involved in the trafficking violations. For the purposes of this motion, the court will view the evidence in the light most favorable to the plaintiff, and assume that other employees of the Market, and not the owner, committed the violations at issue in this case.

**5.** The charge letter further provided that "[i]f your request *and* the required documentation are not submitted timely, you will lose your right for any further consideration for a civil monetary penalty." A.R. at 62.

**6.** This decision was based on the conclusion that the Market did not qualify for a monetary fine because the management or ownership was involved in the trafficking. A.R. at 47.

**7.** The Review Officer upheld the decision to impose a permanent disqualification rather than a civil penalty because the evidence showed that the owner was involved in the trafficking and "very little training was provided to employees about the Food Stamp Act." A.R. at 24.

more, summary judgment is a proper means of disposing requests for judicial review under 7 U.S.C. § 2023(a)(15), when there are no genuine issue of material fact. *Freedman v. United States Dep't of Agric.*, 926 F.2d 252, 261 (3d Cir.1991) (concluding that a "de novo review is compatible with a summary judgment disposition if there are no material facts in dispute.").

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

### A. *Statute and Regulation authorizing disqualification.*

The Food Stamp Act provides that a store shall suffer the penalty of a perma-nent disqualification upon "the first occasion or any subsequent occasion of a disqualification based upon the purchase of coupons or trafficking in coupons...." 7 U.S.C. § 2021(b)(3)(B) (West Supp.1999); *see also* 7 C.F.R. § 278.6(e)(1)(i) (authorizing FCS to permanently disqualify a store if personnel of the store trafficked food stamps). It is undisputed that the employees of the Market violated the statute and its regulations by trafficking stamps. Plaintiff only challenges the imposition of the permanent disqualification.

### B. *Availability of a monetary penalty in lieu of disqualification.*

■ In lieu of permanent disqualification, the statute provides the FCS with the discretion to impose a civil monetary penalty of up to $20,000 per violation if it "determines that there is substantial evidence that such store ... had an effective policy and program in effect to prevent violations of the chapter and the regulations...." 7 U.S.C. § 2021(b)(3)(B) (West Supp.1999). However, the statute limits that discretion to so-called innocent owners, in that before a monetary penalty may be imposed, the store also must show that the ownership or management of the store was not involved in the conduct of the violation. *See Bobby Miller's Corner, Inc. v. United States*, No. 96–3990, 1997 WL 186327, at *3 (E.D.Pa. Apr.16, 1997); *see also* 7 U.S.C. § 2021(b)(3)(B)(i)–(ii)(I) (West Supp.1999).

■ FCS regulations further define exactly what evidence a store must produce in order to be eligible for a monetary penalty in lieu of permanent disqualification. The regulations provide that:

In determining the minimum standards of eligibility of a firm for a civil money penalty in lieu of a permanent disqualification for trafficking, the firm shall, *at a minimum*, establish by substantial evidence its fulfillment of each of the following criteria:

Criterion 1. The firm shall have developed an effective compliance policy as specified in § 278.6(i)(1); and

Criterion 2. The firm shall establish that both its compliance policy and program were in operation at the location where the violation(s) occurred prior to the occurrence of violations cited in the charge letter sent to the firm; and

Criterion 3. The firm had developed and instituted an effective personnel training program as specified in § 278.6(i)(2); and

Criterion 4. Firm ownership was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of trafficking violations. . . .

7 C.F.R. § 278.6(i). While, for the purposes of this motion, the court assumes that the Market has produced sufficient evidence to satisfy criterion four, the court concludes that the Market has failed to produce sufficient evidence to raise a genuine issue of material fact concerning its compliance with the other three criteria.

In order to satisfy criterion one and criterion two, establishing the existence of an effective compliance policy, a store must produce to FCS "written and dated statements of firm policy which reflect a commitment to ensure that the firm is operated in a manner consistent with [the statute and regulations]. . . ." 7 C.F.R.

§ 278.6(i)(1). Furthermore, the regulations provide that FCS shall consider such policy statements "only if documentation is supplied which establishes that the policy statements were provided to the violating employee(s) prior to the commission of the violation." *Id.*[8] Plaintiff has not produced any contemporaneous documentation, during the administrative proceedings or in this court, that the Market had a written compliance policy and that a copy of the written policy was provided to the violating employees prior to the commission of the violation.[9]

Nor has plaintiff produced sufficient evidence to raise a genuine issue of material fact as to its compliance with criterion three. To satisfy that criterion and be eligible for a monetary penalty, a store "shall have developed and implemented an effective training program for all managers and employees on the acceptance and handling of food coupons. . . ." 7 C.F.R. § 278.6(i)(2). The store "shall document its training activity by submitting to FCS its dated training curricula and records of dates training sessions were conducted; a record of dates of employment of firm personnel; and contemporaneous documentation of the participation of the violating employee(s) in initial and any follow-up training held prior to the violation(s)." *Id.*[10]

---

8. In addition, the FCS should evaluate the effectiveness of the store's compliance policy by considering, *inter alia*, the following:

(i) Documentation reflecting the development and/or operation of a policy to terminate the employment of any firm employee found violating FSP regulations;

(ii) Documentation of the development and/or continued operation of firm policy and procedures resulting in appropriate corrective action following complaints of FSP violations or irregularities committed by firm personnel;

(iii) Documentation of the development and/or continued operation of procedures for internal review of firm employees' compliance with FSP regulations. . . .

7 C.F.R. § 278.6(i)(1)(i)–(iii).

9. Plaintiff had the opportunity, and in fact was required to submitted documentary evidence of such a written policy to the administrative officer, but failed to do so.

10. The FCS shall consider the store's training program effective if it meets the following:

(i) Training for all managers and employees whose work brings them into contact with food stamps . . . shall be conducted within one month of the institution of the compliance policy under Criterion 1 . . .;

(ii) Training shall be designed to establish a level of competence that assures compliance with [the regulations' requirements];

(iii) Written materials. which may include FCS publications and program regulations that are available to all authorized firms, are used in the training program.

7 C.F.R. § 278.6(i)(2)(i)–(iii).

Plaintiff contends that it has offered the following evidence regarding its compliance training program: 1) an allegation in plaintiff's complaint that plaintiff had developed and implemented an effective compliance policy, *see* Compl. ¶ 20; and 2) plaintiff's affidavit which alleges that the Market's employees were trained concerning eligible and ineligible food stamps transactions, *see* Pl.'s Aff. ¶ 8. Even assuming that these statements are true, post facto declarations are insufficient to satisfy the requirements under the regulations for contemporaneous documentation. Since, plaintiff has never submitted any documentation of the Market's training program, for example, a dated training curricula or records of dates training sessions were conducted and, further, there is no contemporaneous documentary evidence of the participation of the violating employees in initial or any follow-up training held prior to the violations, plaintiff has failed to raise a genuine issue of material fact concerning compliance with three of the four criteria set forth in the regulations.

## IV. CONCLUSION

While the statute and the regulations permit a discretionary monetary penalty in lieu of permanent disqualification, a plaintiff must satisfy all four criteria to be eligible for consideration. The Market did not and can not prove all four criteria because it has failed to produce any written evidence concerning its compliance policy and training program. Since plaintiff has raised no genuine issue of material fact concerning these issues, summary judgment is appropriate in this case.

An appropriate order follows.

### ORDER

**AND NOW,** this **20th** day of **August, 1999,** upon consideration of defendant's motion for summary judgment (doc. nos. 28, 41), and plaintiff's response thereto (doc. no. 39), it is hereby **ORDERED** that defendant's motion for summary judgment is **GRANTED.** **JUDGMENT** is **ENTERED** in favor of defendants and against plaintiff. The clerk shall mark this case **CLOSED.**

**AND IT IS SO ORDERED.**